THERESIA DOLWIG FISCHER, Plaintiff and Appellant, v. JOHN DOLWIG, Defendant and Respondent, and Elizabeth Willer, Susanna Kunz, Katherina Duckhorn, and Magdalena Schiller, Defendants.

(166 N. W. 793.)

**Antenuptial agreement — other than to marry — void unless in writing.**

1. An antenuptial agreement other than a mutual promise to marry is, under the provisions of § 5888 of the Compiled Laws of 1913, void unless made in writing.

---

NOTE.—On postnuptial written contract to confirm antenuptial oral contract relinquishing rights in property, see note in 11 L.R.A.(N.S.) 593, where it is held that a written ratification after marriage of an oral antenuptial contract in regard to the disposition of property was valid and enforceable between the parties.

39 N. D.—11.

**Oral antenuptial agreement — void under statute — after marriage reduced to writing — does not validate.**

2. An oral antenuptial agreement, void under the Statute of Frauds because not in writing, cannot be validated by reducing the same to writing after the marriage has been consummated.

**Probate proceeding — party to — service of citation — may waive — appointment of administrator — joining in — waiver of notice.**

3. A party to a probate proceeding may waive the service of citation by joining in the appointment for an administrator and by waiving such service in such petition.

**Actual notice of proceeding — seasonable appearance in — no citation served — cannot complain.**

4. One who has actual notice and seasonably appears cannot complain that a citation was insufficient or that no citation was given.

**Final decree of distribution — of estate — party standing by and allowing — without making claim to exemptions — judgment of probate court — no effort to set aside — no appeal — validity of judgment — cannot be questioned — on grounds which could have been considered on appeal.**

5. A person who stands by and allows a final decree of distribution to be entered, without in any way claiming the exemptions provided for by §§ 8725 and 8727 of the Compiled Laws of 1913, and who does not seek to have said judgment set aside or modified by said county court, and does not appeal therefrom, may not afterwards question the validity of such judgment on grounds which could have been presented on such appeal.

Opinion filed February 9, 1918.

Action to set aside a decree of the County Court of Stark County distributing the estate of a deceased person.

Appeal from the District Court of Stark County, *W. C. Crawford*, J. Judgment for defendants. Plaintiff appeals.

Affirmed.

*Charles Simon* and *Casey & Burgeson*, for appellant.

The marriage settlement is void under our Statute of Frauds because it was not signed until some length of time after marriage. An oral antenuptial contract other than to marry is void and cannot be validated after marriage. 21 Cyc. 1293; Comp. Laws 1913, § 588.3, Rowell v. Balber, 142 Wis. 937, 27 L.R.A.(N.S.) 1140, 125 N. W. 937; McAnnulty v. McAnnulty, 120 Ill. 26, 60 Am. Rep. 552, 11 N. E. 397; Richardson v. Richardson, 148 Ill. 563, 26 L.R.A. 305, 36 N. E. 608.

In antenuptial contracts affecting property, good faith is the cardinal principle in such contract. If the provision made for the wife is unreasonably disproportionate to the means of the husband, the presumption of designed concealment is raised and the burden of disproving the same is upon him. Re Pulling, 93 Mich. 274, 52 N. W. 1116; Achilles v. Achilles, 151 Ill. 136, 37 N. E. 693; Tayor v. Taylor, 144 Ill. 436, 33 N. E. 532.

The waiver of notice and citation is not sufficient to excuse the service of such citation in the different proceedings had in the probate of an estate. Comp. Laws 1913, § 8530.

No waiver of any kind can be effective in a probate proceeding unless the person executing such waiver has already appeared in such proceeding,—at the date of the waiver here, no proceeding had been instituted in court. Comp. Laws 1913, § 8555.

Where a party understands and signs an instrument, he is estopped to question it, or where he assumes a position in a judicial proceeding. 16 Cyc. 796; Gjerstadengen v. Van Duzen, 7 N. D. 612, 66 Am. St. Rep. 679, 76 N. W. 233.

Property of decedent which is directed by statute to be set apart to the widow vests in her at once by operation of law, upon the death of the husband. 18 Cyc. 403; Fore v. Fore, 2 N. D. 260, 50 N. W. 712.

Marriage contracts do not bar the wife's statutory exemptions unless such exemptions are particularly mentioned and then only when there is full and sufficient provision made for the wife. 21 Cyc. 1260; Re Pulling, 93 Mich. 274, 52 N. W. 1116; McMahill v. McMahill, 105 Ill. 596, 44 Am. Rep. 819; Leach v. Leach, 65 Wis. 284, 26 N. W. 754; Zachmann v. Zachmann, 201 Ill. 380, 94 Am. St. Rep. 180, 66 N. E. 256.

Conveyances which leave the wife without support will be set aside as fraudulent.

Our statute expressly authorizes an action in the district court to recover real property or to set aside a decree of the county court in a proper case, at any time within three years after discovery of the fraud or other ground upon which such action may be instituted. Fischer v. Dolwig, 29 N. D. 561, 151 N. W. 431.

*T. F. Murtha* and *J. W. Sturgeon,* for respondents.

Any person not under disability may waive any notice or citation

designed to secure jurisdiction over his or her person. The county court secured jurisdiction over the property of this estate by the filing of the petition for administration. Attached to and accompanying the petition was a written and signed waiver of service of all citations and notices "which otherwise would be required by law in the course of the administration of said estate." Code, § 8565; 18 Cyc. 120, ¶ 4; Flood v. Kerwin, 113 Wis. 673, 89 N. W. 845.

Also lack of notice is immaterial to persons who appear and consent to the proceedings. 29 Cyc. 1117 (c).

A waiver by the party for whose benefit or protection notice should be given is equivalent to notice, and dispenses with it. Williams v. Addison, 93 Md. 41, 48 Atl. 458; Allured v. Voller, 107 Mich. 476, 65 N. W. 285; People ex rel. Martin v. Albright, 23 How. Pr. 306; Smyser v. Fair, 73 Kan. 773, 85 Pac. 408; Rice v. Hosking, 105 Mich. 303, 55 Am. St. Rep. 448, 63 N. W. 311.

Also a general appearance operates as a waiver of all defects in process. 3 Cyc. 510 (II), 512 to 514, 515 (II) of Person (A); 2 R. C. L. 324, § 4.

So also, a voluntary appearance waives all defects in service of citation. 1 Black, Judgm. 2d ed. § 225; Nashua Sav. Bank v. Lovejoy, 1 N. D. 211, 46 N. W. 411; Lower v. Wilson, 9 S. D. 252, 62 Am. St. Rep. 865, 68 N. W. 545; Waldron v. Chicago & N. W. R. Co. 1 Dak. 351, 46 N. W. 456; Bowler v. First Nat. Bank, 21 S. D. 449, 113 N. W. 618; State ex rel. Railroad Comrs. v. Duluth, W. & P. R. Co. 25 S. D. 106, 125 N. W. 565; Ramsdell v. Duxberry, 17 S. D. 311, 96 N. W. 132; Fanton v. Byrum, 26 S. D. 366, 34 L.R.A.(N.S.) 501, 128 N. W. 325, 1 N. C. C. A. 812; Forman v. Healey, 19 N. D. 116, 121 N. W. 1122; Hart v. Wyndmere, 21 N. D. 383, 131 N. W. 271, Ann. Cas. 1913D, 169; Rogers v. Penobscot Min. Co. 28 S. D. 72, 132 N. W. 792, Ann. Cas. 1914A, 1184.

Fraud must be proved. It cannot be presumed. 20 Cyc. 108 (j), 120 (1).

Plaintiff made all her discoveries six months before making or entering of final decree; she took no steps to correct same. If the waiver of notice had been procured by fraud and this fact had been brought to the attention of the county court, it must be presumed that the judge

would have required personal service of personal citation. By silence after full knowledge, plaintiff ratified the waiver and is estopped to repudiate it. Emerson-Newton Implement Co. v. Cupps, 15 N. D. 606, 108 N. W. 798; 2 Black, Judgm. 2d ed. § 633; 16 Cyc. 684, 685, 770, 772 to 805; 20 Cyc. 92; McDonough v. Williams, 8 L.R.A.(N.S.) 452, note; Bostwick v. Mutual L. Ins. Co. 116 Wis. 392, 67 L.R.A. 705, 89 N. W. 538, 92 N. W. 246; Robertson v. Smith, 15 L.R.A. 274, note; Dolvin v. American Harrow Co. 28 L.R.A.(N.S.) 892, note.

Fraud could not be imputed to the other heirs, and as to them plaintiff owed the duty to promptly repudiate the waiver if it was wrong. 16 Cyc. 759 et seq; Bacon v. Mitchell, 14 N. D. 454, 4 L.R.A.(N.S.) 244, 106 N. W. 129; Fanton v. Byrum, 26 S. D. 366, 34 L.R.A. (N.S.) 501, 128 N. W. 325, supra.

The waiver must stand unless by clear, satisfactory, and convincing proof it is shown to have been obtained by fraud. Matchett v. Liebig, 20 S. D. 169, 105 N. W. 170.

Plaintiff's waiver gave the court jurisdiction of the person. The county court's judgment upon a matter within its jurisdiction ranks the same as a judgment of the district court. Comp. Laws 1913, §§ 8524, 8846; Fischer v. Dolwig, 29 N. D. 561, 151 N. W. 431; Sjoli v. Hogenson, 19 N. D. 82, 122 N. W. 1008.

It can only be attacked by moving for correction in the county court or by appeal. Crew v. Pratt, 119 Cal. 139, 51 Pac. 39; Civ. Code, §§ 715, 716.

In proceedings for final distribution of an estate devised in trust, it is the duty of the court under the law to adjudicate the question of the validity of the trust. Re Harrington, 147 Cal. 124, 109 Am. St. Rep. 118, 81 Pac. 546; Cunha v. Hughes, 122 Cal. 111, 68 Am. St. Rep. 27, 54 Pac. 535; Lasley v. Preston, 132 Mich. 208, 93 N. W. 253; Eddy v. Kelly, 72 Minn. 32, 74 N. W. 1020; Chadbourne v. Hartz, 93 Minn. 233, 101 N. W. 68; Winkle v. Winkle, 8 Or. 193; 1 Black, Judgm. §§ 246 et seq., 252, note 150, § 261, note 135.

The decree of the county court can only be attacked for fraud, or for want of jurisdiction, neither of which appears here. 1 Black, Judgm. 2d ed. §§ 245, 246, 261, note 235, p. 394, § 262, note 150, §§ 267, 268, 291; 23 Cyc. 1061, 1323, 1295 (9); 18 Cyc. 665, 402, note 83; 11 Decen. Dig. Judgments, §§ 470 et seq.

By signing the waiver and by her appearance personally, and by attorney in the county court, plaintiff has estopped herself from attacking the decree of the county court.  Boyd v. Wallace, 10 N. D. 78, 84 N. W. 760.

Plaintiff is bound by her appearance and acts in the county court, and she cannot disclaim authority of her attorney because he may have erred in judgment on matters of law.  Bacon v. Mitchell, 14 N. D. 454, 4 L.R.A.(N.S.) 244, 106 N. W. 129; Keenan v. Daniells, 18 S. D. 102, 99 N. W. 853; Corson v. Smith, 22 S. D. 501, 118 N. W. 705.

Plaintiff has not been deprived of any right by any act of others.  Bruegger v. Cartier, 20 N. D. 72, 126 N. W. 491.

An oral marriage settlement made before marriage and reduced to writing after marriage is valid and enforceable where the settlement has been fully executed, and where the widow keeps the property received under such settlement.  Erb v. McMaster, 88 Neb. 817, 130 N. W. 576; Claypoole v. Jaqua, 135 Ind. 499, 35 N. E. 285; Stubbs v. Whiting, 1 Rand. (Va.) 322; Woods v. Woods, 77 Me. 434, 1 Atl. 193; Powell v. Meyers, 23 Ky. L. Rep. 795, 64 S. W. 238; De Farges v. Ryland, 87 Va. 404, 24 Am. St. Rep. 659, 12 S. E. 805; Sanders v. Miller, 79 Ky. 517, 42 Am. Rep. 237; Lively v. Paschal, 35 Ga. 218, 89 Am. Dec. 282; Rhoades v. Davis, 51 Mich. 306, 16 N. W. 659.

By appropriate terms all statutory rights in the homestead or in exemptions may be waived.  Rieger v. Schaible, 81 Neb. 33, 17 L.R.A. (N.S.) 866, 115 N. W. 560, 116 N. W. 953, 16 Ann. Cas. 700; Re Deller, 141 Wis. 255, 25 L.R.A.(N.S.) 751, 124 N. W. 278; 18 Cyc. 390 to 396.

The county court's final decree of distribution is conclusive on the right of exemptions.  18 Cyc. 390 to 396, supra; 23 Cyc. 1295.

BRUCE, Ch. J.  This is an action to set aside a decree of the county court of Stark county, awarding to the defendants the real and personal property of one Jacob Dolwig, deceased, and asking that the defendants be compelled to account for the profits of the real estate of the said Jacob Dolwig since his death, and for all notes and accounts belonging to said estate; and that the plaintiff be decreed one third of the said notes and accounts as well as an undivided one-third interest as the wife of the said Jacob Dolwig in all of the real estate possessed by

him at the time of his death; and that before any division of the personal property be made there be set apart for the plaintiff $1,500 as her exemption as provided for by § 8725 of the Compiled Laws of 1913.

The defense was an alleged marriage settlement by which the said plaintiff, Theresia Dolwig Fischer, waived all right to the estate for the sum of 200 Austrian gulden. A final decree of distribution by the county court in October, 1911, to the effect that "Theresia Dolwig received her share of the estate of the said deceased during her lifetime and by an instrument in writing filed in this court and in this proceeding, and waived all right to any share in the estate of the said Jacob Dolwig, deceased," and that the plaintiff had notice and full knowledge of the proceedings in the county court, waived all service of notice, and impliedly, if not actually, consented to such proceedings and to such judgment.

The plaintiff, on the other hand, alleges that her signature to the waiver of all citation in the said administration proceedings was obtained by fraud, but on this point the trial court found that she signed the waiver; that she knew what she was doing; that no fraud was practised upon her; that she executed a marriage settlement, which waived her rights in the estate, and received $200 thereunder and kept it; that she employed one McBride to represent her in the probate proceedings; that although the judgment was not entered until the 13th day of October, 1911, the plaintiff and her attorney as early as March, 1911, knew that said waiver and said marriage settlement were on file in the county court and were being relied upon by the county court and by the defendants in the suit; that the plaintiff and her attorney knew within one week after final decree was entered that it was entered; that the plaintiff advised her attorney that she would put no more money into the case; that plaintiff made no application to the county court for exemption, real or personal, and took no steps in said court to set aside the said decree or to appeal therefrom.

The defendant also contends that even if it be conceded that the written marriage settlement was void as having been made after the marriage, and the oral settlement was void on account of not having been in writing, and even though the waiver of citation was obtained by fraud, and the judgment of the county court was not binding upon the plaintiff, still there is no ground for equitable interference, since after the

marriage the plaintiff expressly recognized the contract of settlement by joining in a deed of her husband's land to the defendant John, and taking from him an agreement for the support of the couple during their joint life, and that in this way all of the real estate of the deceased had been deeded away. As far, too, as the personal property is concerned, that is to say, the $1,700 in notes, he contends that as a condition of such support he had also agreed that the daughters should each receive $500, John to make up any deficiency; that the money in the estate was not sufficient for this purpose, and that John had paid the deficiency and made good the gifts, and that she should not be allowed at this time to withdraw from an executed agreement. This contention we hold to be sound.

Although there is some dispute in the testimony, the trial court found, and we believe correctly, the following facts:

In 1898 Jacob Dolwig, his wife Magdalena, his son John, and three daughters, came from Hungary to Stark county, North Dakota. Jacob had about $1,100 in money and no other property. John was then nineteen years old. The Dolwig family located on a tract of 160 acres of land in section 4, township 138, range 95, Stark county, as a homestead and made five-year proof thereon. In 1902 Jacob's wife died. John and the girls worked at home for the father and also worked out for hire and turned their money in to the father. In the spring of 1904 John was twenty-six years of age. Jacob was then worth in money, land, and property $2,500. This made up of Jacob's $1,100 and the work and earnings of John and the three girls. In the fall of 1903, at the request and direction of Jacob Dolwig, one Anton Duckhorn, Jacob's father-in-law, and the husband of the plaintiff's cousin, wrote to the plaintiff, a widow in Hungary, and told her that Jacob was a widower fifty years old and would give plaintiff a ticket to America and 200 gulden, about $80, if plaintiff would come to America and marry Jacob, plaintiff to get nothing more in case Jacob died before the plaintiff. On receipt of this letter the plaintiff wrote to Duckhorn, whom she had known in Hungary accepting Jacob's proposition, and Jacob sent the transportation, and plaintiff came to Dickinson in March, 1904, and married Jacob on April 18, 1904. Before the marriage, plaintiff visited with the Massereck and Willer families in Dickinson, and told them that she was only to get $200 from the Dolwig estate.

On the day after the marriage, that is to say, on April 19, 1904, Jacob and the plaintiff entered into an agreement in writing whereby and whereunder they agreed to convey to the son John the north half of section 3, township 138, range 95, and the southwest quarter of section 3, township 139, range 95, and sold to the said John four horses, a cow, two calves, and some farm machinery, and John, on the other hand, undertook to pay Jacob $400 in cash; to furnish during the lifetime of Jacob, flour, sugar, coal, etc., to the said Jacob and his wife; to furnish them with a home; to raise for them each year during Jacob's life 10 acres of wheat; keep for them during Jacob's life four head of cattle and one horse; and to furnish 1 acre of land to Jacob and his wife for garden purposes.   John paid the $400 and immediately went into possession of the three quarter sections of land, farmed them and paid the taxes thereon.   By this agreement Jacob turned over to John practically all of his property, having left a horse, four cows, and about $100.   At the time of making this agreement it was also orally agreed between John, Jacob, and the three daughters, that the three daughters should have $500 apiece upon Jacob's death; that Jacob would pay what he could to the girls and that John would make up any deficiency.   On May 28, 1904, and five or six weeks after her marriage and after Jacob had turned his property over to his son, the plaintiff, for the purpose of furnishing evidence of her prior agreement with Jacob, signed and delivered the following marriage settlement, or instrument in writing: "For and in consideration of $200, $100 receipt of which is hereby acknowledged and $100 as witnessed by note of even date due November 1, 1904, I hereby waive all claim in and to the estate of John Dolwig." To this instrument the plaintiff, Theresia Dolwig, fixed her mark.   The instrument, however, was witnessed by one J. M. Hughes and F. Van der Las, who after appears to have been the county judge.   The said J. Van der Las testifies that he explained the writing to the plaintiff in German; that she expressed her satisfaction with the contract, and said that it was in accordance with an oral agreement made prior to the marriage.   Later and on July 18, 1908, and in accordance with the agreement of April 19, 1904, the northwest quarter of section 4 was conveyed to John, and still later and on the 29th day of April, 1909, and at the request of John, the northeast quarter was conveyed to one Frank T. Lefor, the plaintiff joining in both of the deeds with her husband,

Jacob. By agreement between Jacob and John, John then deeded the southwest quarter of section 33 to Jacob to stand as security for the performance on his part of the agreement of support of April 19, 1904, Jacob, however, never took possession of the southwest quarter of section 33, paid anything for it, paid any taxes thereon, or exercised any jurisdiction over it. The southeast quarter of section 3 was not paid for when John took it. He made payments to the amount of $260, the purchase price being $380. He put in improvements on the north half of section 4 to the value of $1,000. In 1909 John moved to Gladstone, having traded the north half of section 4 in part payment for a store. A few days later Jacob and the plaintiff came to live with John. They lived in a part of the house and did their own housekeeping. John furnished them with the necessities of life in accordance with his agreement of April 19, 1904. On December 19, 1909, Jacob died. On December 29, 1910, John Dolwig filed a petition for the administration of Jacob's estate and was appointed administrator. On December 1, 1911, the plaintiff signed the waiver of citation in said matter. About this time the plaintiff left John's house and went to live with her son by a former marriage, Franz Boor, who lived about 8 miles from Gladstone and the same distance from Dickinson. She testified that she left because she was getting nothing from her husband's estate. When she left she took her bed and other personal belongings and a cow which John gave her. She could not read or speak English, though she could speak German. She was fifty-six or fifty-seven years old when her husband died. She testifies that John told her, when she signed the waiver of citation, that it was for the purpose of having John appointed foreman, and that she repeatedly asked for a share in the estate. John testifies that he explained what was in the waiver; that he misrepresented nothing and held nothing from the plaintiff. There were many people in Gladstone who could read English and speak German. Plaintiff made no attempt to have the waiver read or explained to her by anyone except John. John signed the petition on January 12, 1911, and the court issued a citation naming February 7th as the return day. On February 7th the plaintiff and her son appeared in the county court in Dickinson, and the plaintiff requested the county court to call one Murtha, who was the attorney for the petitioner, and in response the said Murtha came to the county court. At the request of John, Mr. Murtha

advised the plaintiff through her son that it would take about six months to close up the estate; that plaintiff had signed the marriage settlement, and waived all rights to the estate; that the plaintiff had better hire a lawyer. On February 7, 1911, John was appointed administrator. On February 27th he filed an inventory. On February 25, 1911, the plaintiff employed attorney, M. L. McBride, of Dickinson to represent her in said court, and paid him small sums on February 25th, March 8th, and March 16th, in all $25. In February and March, 1911, one George Brown, a clerk in Mr. McBride's office, and who can speak and read German, twice went with the plaintiff, at Mr. McBride's request, to the chambers of the county judge in relation to the estate. There the county judge showed to Brown the marriage settlement, and Brown read the same to the plaintiff and explained it to her in German and did the same with the waiver of citation. This is not denied. At about the same time Mr. Murtha showed the marriage settlement to Mr. McBride and advised Mr. McBride that the other heirs claimed that plaintiff was entitled to nothing from the estate. At McBride's request Murtha had John orally notify the plaintiff of the final settlement. On the day of the final settlement, that is, on October 13, 1911, the plaintiff and her son, in response to John's notice, came to Dickinson and were advised by Murtha that the final decree was to be entered that day, and that plaintiff was to get nothing. On the day of the final settlement the county judge tried to get McBride over the telephone, but could not reach him. About a week after the final settlement the plaintiff and her son John came to McBride's office and McBride's clerk, Brown, at Mr. McBride's request, went with plaintiff and John to the county court and found that a final decree had been entered. They then went back to Mr. McBride's office, and plaintiff was advised that a final decree had been entered; that she had received nothing thereunder, and also advised of her right to appeal. Mr. McBride also told her that appeal would cost $50. The plaintiff then said that she would not spend any more money, and Mr. McBride was not directed to appeal or take any further steps in the action.

It also appears that John paid for the expenses of Jacob's last sickness and burial, $180, and for the cost of administration, $120, making a total expenditure as administrator of $300. He charged nothing for his personal service, he got nothing from the estate, except the south

half of section 33, which he already owned. The two lots in Dickinson were given to the daughters. John also added $300 to the $1,700 in notes, so that each of the four girls received $500 apiece in accordance with the oral agreement of April 19, 1904. He offered to do the same thing for the plaintiff, so that she would also receive $500. It was also found by the trial court, and we believe correctly, that although the south half of section 33 was inventoried as part of the estate, this was merely done as a matter of convenience and to clear the record title, as it already belonged to John under the contract of April 19, 1904, by which he had agreed to support the said Jacob and the plaintiff during the lifetime of the former, and which contract he had fulfilled.

As far as the oral antenuptial agreement was concerned, we are satisfied that it was as testified to by the witness, John Van der Las, who said, "Mr. Dolwig, when the three of us were together, told me that he had made an agreement with Theresia Dolwig, that if she would come to America he would marry her, advancing her the transportation from Europe here, and give her a hundred dollars after she arrived here, with the understanding that she was to relinquish all her interest and right to any property that he might leave in case he died first, *because his first wife and his children, now all grown, had earned and accumulated this property.*

There can be no doubt, too, that a postnuptial agreement was entered into in writing in conformity with this prior agreement.

We are satisfied that the so-called marriage settlement was invalid. It was not reduced to writing until after the marriage. Section 5888 of the Compiled Laws of 1913 requires "an agreement made upon consideration of marriage other than a mutual promise to marry" to be in writing. The antenuptial agreement was therefore invalid, and, to quote from the supreme court of Wisconsin, in construing a statute similar to our own, "we have been cited to no authority and have found none under a statute like ours which holds that an oral antenuptial agreement void under the Statute of Frauds can be validated by a postnuptial contract. Such a doctrine would in effect work a judicial repeal of the statute." See Rowell v. Barber, 142 Wis. 304, 27 L.R.A.(N.S.) 1140, 125 N. W. 937; McAnnulty v. McAnnulty, 120 Ill. 26, 60 Am. Rep. 552, 11 N. E. 397; Richardson v. Richardson, 148 Ill. 563, 26 L.R.A. 305, 36 N. E. 608.

In spite of this finding and conclusion, however, we are satisfied that the plaintiff is not entitled to any relief in this action, and that the judgment of the district court should be affirmed.

We are satisfied that there was a waiver of citation by reason of the written waiver of December 31, 1910. It is true that the petition for appointment of the administrator was not filed until January 12, 1911, and the probate court did not obtain jurisdiction of the case until that time. Even, however, if, as contended by counsel, § 8565 of the Compiled Laws of 1913, which provides that "a party who appears as hereinbefore prescribed, may waive in writing the service of any further citation, notice or papers in the proceeding and thereafter no such citation, notice or paper need be served on him," merely applies to cases where an appearance has already been made, we can see no reason why a party may not in advance, and prior to the filing of a petition for an administration, consent to the same and in advance waive all notice and citation as was done in the case at bar. The petition in the case at bar, for the document was a petition as well as a waiver, signed, by the plaintiff and was as follows:

The undersigned, Theresia Dolwig, Elizabeth Willer, Susanna Kunz, Katherina Duckhorn, and Magdalena Schiller, respondents, all being over twenty-one years, hereby consent that the petition of John Dolwig for the appointment of administrator, and for the administration of the above estate, be granted. And we and each of us hereby waive the service of all citations and notice which otherwise would be required to be given in the course of the administration of said estate. And we hereby consent that said estate be administered and final decree of distribution entered therein without further notice or citation to us or either of us.

Dated December 31, A. D. 1910.

Section 8565 of the Compiled Laws of 1913 provides: "An appearance in any proceeding is effected by giving notice of the appearance in open court either orally or in writing or by pleading or making application therein to the court for an order or direction of any kind. A party who appears, or is held to appear, as is hereinbefore prescribed, is deemed to have knowledge of each postponement and all other acts done

in the course of the proceeding from the commencement until the final disposition thereof, without further notice, except such as is imparted by the records of the court. A party who appears as hereinbefore prescribed, may. waive in writing the service of any further citation, notice or papers in the proceedings and thereafter no such citation, notice or papers need be served on him."

In the petition which is before us the plaintiff, Theresia Dolwig, consented to the appointment of the administrator, and the filing of this petition amounted to an appearance. In the same paper she waived in writing the service of any further citation, and she was entitled to none. Not only is this true, but it is well established that one who has actual notice and seasonably appears cannot complain that a citation was insufficient or that no citation was given. See 18 Cyc. 121. The record in the case which is before us shows conclusively that, not merely did the plaintiff sign the petition, consent to the appointment of the administrator, and waive citation, but that she and her attorney were fully conversant of what was going on, and it is quite evident that both acted on the assumption that the agreement of conveyance and support, even if not the marriage settlement, were binding, and that they had no interest in the proceedings.

We can find nothing in the record which justifies us in setting aside the finding of the trial court that no fraud was practised upon the plaintiff either in signing the marriage settlement or the waiver of citation. It is clear, also, to us that she had abundant opportunity to withdraw such waiver during the probate proceedings, was at all times represented by counsel, and could have appealed from the judgment of the probate court if she had so desired. Surely a person who is entitled to exemptions may decline to claim them and may be estopped from afterwards asserting the right, if she has stood by with knowledge of the fact that they were not being allowed, and has taken no step to intervene in the matter, to have the judgment modified, or to appeal therefrom. There must somewhere be an end to litigation, and judgments which are rendered with jurisdiction of the person must have some force and effect, otherwise there would be ceaseless litigation and no security to titles or to property.

The final decree of a county court is of equal rank with judgments entered in other courts of record, and the same presumptions exist in its

favor. Fischer v. Dolwig, 29 N. D. 564, 151 N. W. 431. While § 8809 of the Compiled Laws of 1913 authorizes an action in the district court to set aside a final decree of the county court for fraud or other equitable ground, it manifestly does not authorize such action to review errors properly reviewable on appeal from the final decree.

In an equitable action to set aside the decree, the plaintiff has the burden of proof, and must overcome the presumptions in favor of the decree by a fair preponderance of all the evidence.

The trial court found that plaintiff had failed to sustain this burden, and this finding is clearly correct.

As we have before stated, we find no proof of fraud in the matter. A Hungarian witness testified that antenuptial agreements, such as the plaintiff attempted to enter into, are by no means uncommon in his country. When the deceased came to America he had only $1,000. When he married the plaintiff he was only worth about $2,500. It is shown conclusively that what property he had was accumulated largely through the labor of his children, and it is not unreasonable that he should attempt to protect them in the possession of that which they had earned. Nor, indeed, was the plaintiff rendered destitute thereby. Not only had she a son by her first marriage living in America, who appears to be a moving factor in this suit, but since the death of the deceased she again married.

The judgment of the District Court is affirmed.

BIRDZELL, J. (concurring). I have entertained grave doubts in this case relative to the propriety of the judgment of the trial court, particularly with reference to the portion sustaining the decree of the county court denying the plaintiff the benefit of the exemption provided for by § 8725, Comp. Laws, 1913. Under this section it is the duty of the probate judge to set apart to the surviving wife that portion of the estate of the deceased which would be exempt from execution if he were living, and other property to the value of $1,500. The purpose of this statute is plain. It is designed to protect the beneficiary from the contingencies incident to a sudden deprivation of reasonable means for securing the necessaries of life, and where such a policy is so clearly evidenced by the legislature, it is the duty of the courts to see that the benign legislative purpose is not thwarted or defeated even by the previ-

ous private contract of. the immediate beneficiary. To this end, contracts involving a waiver of the benefit of exemption statutes are generally held to be void.

But in the instant case there appear to be two obstacles which prevent the granting of the relief sought. First, the record shows that everything that could have been done to apprise the plaintiff that her rights were in process of determination in the county court was done; that she was fully advised of the contention of those interested adversely to her as to the effect of her antenuptial agreement; that she took counsel of an attorney, both for the purpose of ascertaining the effect of her antenuptial agreement and of the terms of the final decree which she knew was entered; and that she was advised of her right to appeal. In view of the above facts, it is difficult to see how a finding of fraud can gain any support from the evidence. Clearly, fraud is not to be inferred from the mere obtaining of a waiver of the statutory notices of the procedure incident to the settlement of an estate. But, of course the plaintiff, in signing the waiver, had a right to assume that the estate would be legally administered, which would include the setting aside of the exemption provided for by § 8725. Inasmuch, however, as the plaintiff had timely warning that the estate was not so administered as to secure to her the benefit of this exemption, it was her duty to proceed in the legal way to secure a modification of the final decree. I fail to see wherein the record discloses that there was any fraud on the part of the defendants, or their attorney, that prevented the plaintiff from taking legal proceedings to protect her rights.

There being no fraud shown, the second objection to the maintenance of this action becomes insuperable. It is elementary that the proper way to correct an erroneous judgment of an inferior court is either by an appeal or, upon a proper showing made, by a proceeding to open or vacate the judgment. 23 Cyc. 1061. The judgment of the probate court, being conclusive on the parties as to the matters adjudicated therein, subject to the right to appeal, which was not exercised, and subject also to the exercise of the equitable powers of a court of general jurisdiction to set aside the decree for fraud (§ 8809, Comp. Laws 1913), as pointed out in the former decision of this case upon the demurrer to the complaint (Fischer v. Dolwig, 29 N. D. 561, 151 N. W. 431), which fraud was not established, the plaintiff is without remedy against these

defendants in the premises. There must come a time when the judgments of the courts having jurisdiction to enter them become finally binding upon the parties. The remedy open to a suitor to impeach a judgment for fraud within the time prescribed by § 8809, Comp. Laws 1913, cannot be considered as a mere substitute for an appeal, nor can the statute be given an interpretation which would have the effect of extending the time for appeal. I concur in the opinion of Mr. Chief Justice Bruce, affirming the judgment of the district court.

GRACE, J. (dissenting). Section 8725 of the Compiled Laws of 1913 is an exemption statute, designed to protect the surviving wife or husband or minor children. The property described under said section is not part of the estate, and is not to be considered part of the estate further than is necessary to do the one act of setting it aside as exempt. The property is in no way subject to the payment of debts, with the single exception of the charges of the last sickness and funeral, and then only when there are no other assets available for the payment of such charges. Under such section it is the mandatory duty of the court, upon the inventory being filed and appraisement had of the property, to set aside such exemption. No order of the court can affect this property except for the purpose of setting it aside in compliance with the mandatory duty of the court in that regard. The person or persons for whose benefit such exemption is provided in such section have an absolute right to such property, and coupled with this is the mandatory duty of the court to set such property aside. It is the general rule that orders and judgments of the county court not appealed from within the time required by law are conclusive until some action is brought to set them aside, or in some way vacate them. That rule does not apply in this case for the reason that the exemption can be considered no part of the estate in the sense that it is subject to any liabilities other than we have named, and hence, the orders, judgments, or decrees in this case not appealed from, cannot and do not affect this exemption. The person or persons entitled to such exemptions are not to be denied them simply because the court inadvertently neglected to perform its plain mandatory duty under said section.

I agree with Justice Birdzell, as expressed in his concurring opinion, that the purpose of the statute is to protect the beneficiary from the con-

tingencies incident to a sudden deprivation of reasonable means for se-
curing the necessaries of life; and where such policy is clearly evidenced
by the legislature it is the duty of the courts to see that the legislative
purpose is not thwarted or defeated, even by the previous private con-
tracts of the immediate beneficiary. I also agree with him as to the law
that contracts involving a waiver of the benefits of exemption statutes
are generally held to be void. This only more clearly shows the care
which courts ordinarily use, and the great length to which they go in
protecting the exemption. There is also another reason for the exemp-
tion, and that is that the surviving wife, husband, or children may not
become dependents of the state, and thereby become a public burden.
The $1,500 which is allowed to be set aside is not intended to be alone
for the surviving husband or wife, although it may be set aside to them.
It is intended for the protection and support as well of the children, if
any. So, also are the additional amounts which may be set aside for the
support of the surviving husband, wife, or children, as provided by law.

We are firmly convinced that the conclusion of the majority of the
court as expressed in their opinion is not in harmony with the spirit of
the exemption law.

RobinSon, J. (dissenting). The plaintiff appeals from the judgment
of the district court. She is the widow of Jacob Dolwig, deceased intes-
tate. Defendants are his children. She brings this action against them
to set aside a pretended judgment in the county court awarding them all
his property. The plaintiff is an illiterate foreigner. She knows
nothing of the language, the laws or the ways of this country, and by rea-
son of her ignorance and mental incapacity she has been sadly duped
and prevented from asserting her legal rights.

Jacob Dolwig, the deceased husband of plaintiff, died about December
15, 1910. He owned the south half of section 33–139–95, two lots in
Dickinson, and $1,738.40 in good promissory notes. The estate amount-
ed to over $6,000. On October 13, 1911, there was made a final decree
of distribution. It gave four daughters of the deceased each $500 in
cash and an undivided one-fourth interest in two lots in Dickinson. To
John Dolwig it gave the rest and residue of the estate, including the
south half of section 33–139–95. To Theresia Dolwig, the plaintiff, it

gave nothing, on the ground that during the life of Jacob Dolwig she had received her share and that she had waived all rights to any share.

On December 31, 1910, the defendant John Dolwig procured the signature of the plaintiff to a paper consent that he be appointed administrator, and that she waive the service of all citations or notices in the course of the administration. Then on February 7, 1911, without any notice to plaintiff, an order was made appointing John Dolwig administrator, and letters of administration were issued to him. On February 7, 1911, an order was made appointing appraisers. On October 13, 1911, there was filed a final report of the administrator. On October 13, 1911, an order was made fixing October 13, 1911, as the day for hearing the final report. On October 13, 1911, the final report was allowed. On October 13th, there was made a final decree of distribution. On October 13th, there was made an order discharging the administrator, and it was all done without any notice to the plaintiff. When Jacob married the plaintiff he was a widower of fifty-one years and she was forty-nine. He and his son John at once commenced to lay schemes to forestall and beat the plaintiff out of her rights. Soon after the marriage, as it seems, they obtained her mark to a paper waiving all her claims to the estate of Jacob Dolwig in consideration of $200. Then she and Jacob Dolwig deeded to the son John certain lands, four horses, some cows, and farm machinery. John was to pay $400 and during the life of Jacob to furnish them a house with some flour, sugar and coal. And thus Jacob turned over practically all his property to his son John and made himself a mere pauper and a dependent, and it was all done to defraud the wife of her inheritance. It was all a fraud on its face. It is of no use to discuss the testimony. On the conceded facts it is folly to argue that plaintiff knowingly and advisedly signed these papers to benefit the defendants and to reduce herself to a state of abject poverty and dependence and want. A person does not sell his birthright for a mess of pottage only when the purchaser takes advantage of his ignorance, necessity, or distress. If the plaintiff received $200 for signing an alleged waiver of her inheritance, it was no consideration at all. It was not even the pocket money to which she was justly entitled during the seven years she lived with deceased as his wife. During the life of Dolwig she received nothing only a poor living, and whatever she did to waive her rights, either during his life or afterwards, must

have been the act of an ignorant, incompetent, or weak-minded person. It must have been the result of deception and undue influence. The homestead and inheritance rights of the widow were fairly worth $3,000 or more. This should have been ascertained and set apart to her in accordance with the statute. Comp. Laws 1913, §§ 5743, 8724, 8725.

So far as concerns the rights of the plaintiff, the proceedings of the probate court were null and void. She was not served with any process; she did not appear, and the pretended waiver was a mere fraud. She knew nothing of a waiver or the legal import of the document which is claimed to be a waiver. There was no marriage settlement. The plaintiff is the surviving wife of the deceased, and as such she is entitled to all the rights of a surviving wife as provided by statute.

I fully concur in the dissenting opinion of Justice Grace. It is not true, as stated in the opinion of Justice Birdzell, that the planitiff was apprised of her rights, or that she ever had a day in court. She was a poor, ignorant, helpless woman, who could not read or write English, and knew nothing of our laws or customs. It was the bounden duty of the court to protect her rights and to guard her against imposition and the lack of competent counsel. When this court certifies that a person is competent and may safely be trusted to give counsel and to defend the rights of suitors, it becomes the duty of the court to make good its certificates by guarding the rights of the poor and ignorant when their counsel fail them.

The plaintiff gave one McBride $25 to advise her and to protect her rights. He accepted her money and did not a thing to protect her. He offered to accept $50 for taking an appeal, but he had done nothing to lay the foundation for an appeal. He showed either gross incompetency or neglect.

No judge can honestly assert that the plaintiff has been given her legal rights. She has been buncoed by a shameful and mock legal proceeding. The pretended judgment of the county court is manifestly and confessedly wrong. It is a fraud on the plaintiff and no court should hesitate to declare it null and void.