TEEL, Adm'x, et al. v. HARLAN.

No. 32953. Oct. 14, 1947.

*185 P. 2d 695.*

Person E. Woodall of Norman, for plaintiffs in error.

J. D. Holland, of Norman, for defendant in error.

RILEY, J. This is an appeal from a decree of distribution in the administration of the estate of John C. Teel, deceased.

Plaintiff in error, Martha Gilbert Teel, the widow of John C. Teel, is administratrix of the estate. John C. Teel died intestate May 2, 1945, survived by Martha and his daughter by a former marriage, Iva Harlan, heirs at law. The administratrix sought distribution of the estate in equal shares to herself and the daughter.

Plaintiff in error and John C. Teel were married January 28, 1938. Thereafter, in February, 1941, they signed a written agreement denominated "Contract and Agreement of Ante-Nuptial Property Settlement". The contract and agreement recited the marriage of the parties and their marriage status on the date the agreement was signed. It then recited:

"Whereas, prior to the date of said contract an agreement and contract of property rights was entered into orally by and between said parties; and

"Whereas, it is deemed expedient and advisable to reduce such oral contract and agreement to writing, and with a view to making same valid and binding under law and in every respect."

The contract then provided that in the event of the death of either party after the marriage, the other party would in no event claim or receive any part of or interest in any of the separate property of the deceased party, either as surviving spouse, heir at law, or otherwise, but that all of the property of the deceased spouse would go to the heirs at law of such deceased spouse or according to any last will of the deceased, and provided further that during the marriage each party would own, hold, and control his or her own separate property without let or hindrance from the other.

The agreement provided further:

"That this instrument was entered into orally prior to said marriage, and is now reduced to writing in order to comply with the laws in such cases made and provided and in order that there may be no misunderstanding of the terms and conditions of said contract of property settlement and was entered into by each party with full knowledge on the part of each of the extent and probable value of all the property, or estate, of the other, and of all the rights that, but for this agreement, would be conferred by law upon each of them in the property, or estate, of the other, by virtue of the consummation of the said proposed marriage; and it was and is the express desire of each of the parties hereto that their respective rights in each other's property, or estate, of whatsoever character the same may be, real, personal, mixed, contingent or otherwise, shall be determined and fixed by this agreement, as reduced to writing, expressing the oral contract and agreement prior to marriage as aforesaid, and not otherwise."

Iva Harlan, daughter of John C. Teel, deceased, protested the petition for distribution, claiming the entire estate of John C. Teel, and relied upon the prenuptial agreement. The county court denied the protest and ordered distribution of the estate to the widow and daughter in equal shares.

The district court reversed and ordered the whole of the estate to be vested in Iva Harlan.

The widow, as administratrix and individually, appeals and contends the oral antenuptial agreement is wholly void by reason by the statute of frauds; that it could not be taken out of the statute by reducing it to writing and signing after the marriage.

The authorities are not in harmony on the question. 49 Am. Jur. 380, 381. There are authorities which hold that an oral antenuptial agreement is void under the statute of frauds and may not be taken out of the statute by reduction to writing and signing after the

marriage. Rowell v. Barber, 142 Wis. 304, 125 N.W. 937. The decision in that case is based upon the theory that because the statute declares such oral agreement void, no agreement ever existed which could be brought into existence by reduction to writing and signing after the marriage.

However, the general rule is that the provision of the statute of frauds requiring contracts in consideration of marriage to be in writing, applies only to an executory contract. It does not apply to parol antenuptial marriage settlements when fully executed. 49 Am. Jur. 380; Owsley v. Owsley, 121 Okla. 259, 249 P. 692. Even in Rowell v. Barber, supra, it is said:

". . . Agreements made before marriage respecting the property of the parties when executed by the transfer and delivery of the property may be good, though void under the statute before execution."

So, it cannot be said that such contracts have no existence whatever.

Sudbrock v. Kroener (Cal.) 29 P. 2d 435, holds that an oral antenuptial agreement, declared invalid by the statute, cannot be validated by postnuptial contract. But, in that case the oral antenuptial agreement was declared invalid only as against creditors. As to the transfer of the property after marriage, under the antenuptial agreement, the court said that the transfer of the property involved after the marriage was a valid transfer unless inhibited by a statute relating to the transfer of property in fraud of creditors.

Other cases to the same effect are cited: Fischer v. Dolwig, 39 N. D. 161, 166 N.W. 793.

Other courts hold that a postnuptial writing, executed to give effect and make a writing of the prior oral antenuptial agreement, is of no effect though the statute merely makes oral antenuptial agreements unenforceable

and does not in terms declare such contracts void. Richardson v. Richardson, 148 Ill. 563, 36 N.E. 608; McAnnulty v. McAnnulty, 120 Ill. 26, 11 N.E. 397.

Our statute does not provide when the written contract or memorandum thereof in writing must be signed. The general rule is that the memorandum of the contract required by the statute of frauds may be made subsequently to the making of the contract itself and at any time before an action is brought on the contract, 37 C.J.S. 647, and may be made at any period of the performance of the contract and even after an alleged breach has occurred, 37 C.J.S. 648. Schuerer v. Crockett, 108 Okla. 218, 236 P. 30; Massie-Wilson Grocery Co. v. Carroll, Brough, Robinson & Humphrey, 105 Okla. 56, 231 P. 1084; Bolene Refg. Co. v. Zobisch Oil Co., 98 Okla. 202, 224 P. 942.

As to agreements in consideration of marriage, it is said:

"In applying the provision of the statute of frauds relating to agreements in consideration of marriage, it is more commonly held that a verbal antenuptial contract may be reduced to writing after the marriage, or be evidenced by a written memorandum made thereafter, so as to render it, when properly signed, valid and enforceable as between the parties and persons claiming under them. The contrary and minority view is based on statutes declaring the oral antenuptial contract void and not merely unenforceable by action; and, where the statute requires the contract itself to be in writing, the signing of a written instrument after marriage can be regarded as nothing more than a mere acknowledgment in writing of the terms of the previous parol agreement, and does not meet the requirements of the statute."

Whether a case comes within the majority rule or the minority rule depends largely upon whether the statute of frauds is construed as making the oral contract void ab initio or so as to operate merely upon the remedy or character of evidence required to establish the contract.

Whatever the rule may be in other states, this court, in Massie-Wilson Gro. Co. v. Carrol, Brough, Robinson & Humphrey, supra, after quoting the general rule as stated in 2 R.C.L. §271, p. 642, and quoting with approval from Capitol City Brick Co. v. Atlanta Ice & Coal Co., 63 S.E. 563, a Georgia case, said:

"As we understand the meaning and purpose of this section, 5034 of our statute, it does not prohibit the making of a verbal contract, but only relates to the remedy of enforcing it. This seems to be the proper meaning of the statute as held by many states, and as embodied in the rule laid down in 27 C.J. page 309, section 398, as follows:

" 'In most jurisdictions the statute of frauds is held to relate to the remedy only and not to affect the validity of an oral contract within its terms. Such a contract, if otherwise valid, remains so, and the sole effect of the statute is to render it unenforceable by one party against the will of the other who abandons or repudiates it.'

"See the many cases cited under this rule, including our own court."

Section 5034, referred to therein, is the same as 15 O.S. 1941 §136. With that construction of the statute of frauds, the instant case comes squarely within the rule stated in Eberhart v. Rath, 89 Kan. 329, 131 P. 604, said in the note in 37 C.J.S. 648, to be a well considered case. That case answers every question in the instant case. The pertinent facts and holding of the court are stated in the first paragraph of the syllabus as follows:

"A widow residing and owning lands in this state married a man residing and owning property in Nebraska. As part of the marriage contract it was orally agreed that he should receive nothing of her estate in case she died first, and that she should receive the sum of $1,000 only of his estate in case he died first. After the marriage in Kansas, the parties established their home in Nebraska, where they resided for 17 years, when she died, leaving children by a former marriage and a son by her last marriage. Soon after the marriage the husband and wife entered into a written contract, in view of the oral agreement, and of the same purport. In this action for partition brought by the children of the former marriage, the surviving husband claims one-half of the land in this state owned by his wife at the time of the marriage and at her death. It is held that the written contract is valid and effectual, although it does not recite or refer to the previous oral agreement."

The facts there are quite similar to the facts in the instant case except that there the written instrument did not recite or refer to the previous oral agreement. In that case, the trial court found that the written agreement was made with the understanding that it was a part of the marriage contract, though it did not affirmatively appear that the contract contained any recital of or reference to the oral agreement. In the instant case the written agreement expressly recites and affirms the prenuptial oral agreement.

In the Everhart case, supra, the Supreme Court of Kansas pointed out that under the statutes of that state, relating to married women, the property of a woman at the time of her marriage remains her own and she may, after marriage, sell and convey it. Oklahoma has substantially the same statute, 32 O.S. 1941. Under section 5 of that title, either husband or wife may enter into any engagement or transaction with the other or with any other person respecting property which either might, if unmarried, subject, in transactions between themselves, to the general rules which control the action of persons occupying confidential relations with each other, as defined by the title on Trusts. Thereunder, a property settlement entered into between the husband and wife, without regard to a divorce, is unquestionably valid and enforceable in the absence of fraud, duress, coercion, or undue influence. Wheeler v. Wheeler, 167 Okla. 598, 32 P. 2d 305. Under that statute, it appears that agreements between spouses may be made (1) to settle

property rights; (2) to immediately separate; and (3) to provide for the support of either during such separation, be it temporary or permanent; and that such an agreement in lieu of alimony will be enforced though not definite as to the total amount to be paid, when such contract stands alone and is not merged into or extinguished by a decree of divorce. Murphy v. McElroy, 185 Okla. 388, 92 P. 2d 369.

Had the parties in this case, before marriage, entered into an oral contract for the sale of real property by one to the other, they could have validated the agreement by reducing it to writing after the marriage.

Under the statute of frauds as heretofore construed and 32 O.S. 1941, there is no sound reason why a husband and wife may not, after marriage, validate an oral antenuptial agreement, in all respects valid other than not being in writing, the same as they may any other agreement respecting their property.

The surviving wife was incompetent to testify to a conversation or transaction with her husband, since deceased, by which she claims that the agreement as reduced to writing was subsequently abrogated by the destruction of the written instrument. Testimony as admitted concerning the matter should have been excluded. Eberhart v. Rath, supra.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.