Herbert, J.
The first'question presented is whether the postnuptial writing of a contract incorporating and confirming the terms and conditions of an antenuptial oral agreement which, standing alone, would be unenforceable under the statute of frauds, validates and takes such antenuptial oral agreement outside the statute.
The section referred to as the statute of frauds is Section 1335.05, Revised Code, which provides as follows:
“No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; nor to charge an executor or administrator upon a special promise to answer damages out of his own estate; nor to charge a person upon an agreement made upon consideration of marriage, or upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning. them, or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or *571 note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.”
The appellee, as the surviving spouse, relies on the case of Henry v. Henry (1875), 27 Ohio St., 121. The statute of frauds then in effect (see 1 S. & C., 659) was almost identical with Section 1335.05, Revised Code, supra.- The syllabus in that ease held that “an antenuptial contract, in parol * * * is void under the fifth section of the statute of frauds * * The court also held that the oral contract was “an entire one” and held further that there was not sufficient part performance as to take the case out of the statute. The factual situation of that case makes it inapplicable to this one.
Cited also by the appellee are the cases of Finch v. Finch (1860), 10 Ohio St., 501 (referred to in the Henry case), Spangler v. Dukes (1884), 39 Ohio St., 642, and DuBois v. Coen, Exr. (1919), 100 Ohio St., 17, 125 N. E., 121.
In the Finch case there was an oral antenuptial agreement and it was held “that the agreement was one made ‘upon consideration of marriage’ within the statute of frauds and that there was no such part performance as would in equity put it out of the operation of the statute” and “such agreement was under the circumstances stated no bar to the claim of dower.”
The Finch case is likewise inapplicable here.
In Spangler v. Dukes, supra, the husband during coverture conveyed land to the wife in consideration that she release all claims as widow against his estate. This court held that, upon his death intestate having other real estate to which she was entitled to dower under the statute, she could elect to waive the provisions made for her and claim her dower, but she could not claim both. The decision in that case was not based on an antenuptial agreement but mainly upon the question of performance.
Neither was there an antenuptial agreement in the DuBois case, supra, but rather an interpretation of Section 8000, General Code (now Section 3103.06, Eevised Code). The court there held that this statute prevented recovery by the executor of the wife’s estate from the husband on a promissory note *572 made by Mm and delivered to the wife during marriage in consideration of a release of all her interest in Ms estate, including her right of distributive share and inchoate dower therein. In that case it is interesting to observe that four of five notes executed by the husband to the wife had apparently been paid prior to the action on the fifth note.
The statute of frauds as adopted in Ohio is aMn to the fourth section of the original English statute of frauds wMch provided “that from and after the said four and twentieth of June [1676] no action shall be brought whereby to charge any executor or administrator upon any special promise, to- answer damages out of his own estate; (2) or whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriages of another person;.(3) or to charge any person upon any agreement made upon consideration of marriage; (4) or upon any contract or sale of lands, tenements or hereditaments, or any interest in or concerning them; (5) or upon any agreement that is not to be performed within the space of one year from the making thereof; (6) unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized. ’ ’ 8 English Statutes at Large (1763), 405.
Neither the English nor the Ohio statute of frauds contains the words “void,” “invalid” or similar language.
In 2 Williston on Contracts (Rev. Ed.), 1517, Section 527, it is stated: “Under the English statute it has been held that only the enforceability, not the validity, of a bargain depends upon the satisfaction of the statute. It is even said that the only effect of the statute is to require certain evidence in order to prove the bargain.” A like rule obtains in this state. See Woods v. Dille, 11 Ohio, 455; Minns v. Morse, 15 Ohio, 568, 45 Am. Dec., 590; Lefferson v. Dallas, 20 Ohio St., 68; Heaton v. Eldridge & Higgins, 56 Ohio St., 87, 46 N. E., 638, 60 Am. St. Rep., 737, 36 L. R. A., 817.
In the majority opimon of the Court of Appeals, it is stated, in effect, that the oral antenuptial contract must have *573 been reduced to writing before marriage in order to be valid, and that after marriage the agreement dated January 9, 1951, cannot be supported as a note or memorandum of the oral antenuptial agreement because of the provisions of Section 3103.06, Revised Code.
In 2 Williston on Contracts (Rev. Ed.), 1700, Section 590, it is stated:
“It is commonly said that a memorandum may be made at any time subsequent to the making of a contract, and prior to the bringing of an action.” See, also, Restatement of the Law of Contracts, 290.
A general statement applicable to antenuptial contracts is found in Lindey on Separation Agreements and Antenuptial Contracts (Rev. Ed.), 806, Section 90, as follows:
“In most jurisdictions where the statute of frauds requires an agreement made upon consideration of marriage to be in writing, a postnuptial memorandum may validate an oral ante-nuptial contract. However", some courts have not been too sympathetic to the idea of validation.”
Courts of other states have considered this question of when an oral antenuptial contract must be reduced to writing. The following cases support the validity of antenuptial agreements not reduced to writing until after marriage:
Battin v. Merchants State Bank (1926), 202 Iowa, 976, 208 N. W., 343; Powell’s Admr. v. Meyers (Ky. 1901), 64 S. W., 428; Teel, Admx., v. Harlan (1947), 199 Okla., 268, 185 P. (2d), 695; Buffington v. Buffington, Exr. (1898), 151 Ind., 200, 51 N. E., 328; Koontz v. Koontz (1927), 86 Ind. App., 206, 156 N. E., 524; Haraldson v. Knutson (1919), 142 Minn., 109, 171 N. W., 201; Smith v. Farrington (1942), 139 Me., 241, 29 A. (2d), 163.
Contra, Peterson v. Peterson (1929), 55 S. D., 457, 226 N. W., 641 (where the postnuptial memorandum was executed eight years after marriage).
For further discussion of the validity or enforceability of postnuptial memoranda of antenuptial agreements see, also, 5 Wisconsin Law Review, 372; 39 Yale Law Review, 293; 28 Michigan Law Review, 215, and 12 Iowa Law Journal, 164.
It would appear from a review of the foregoing-cited cases *574 and authorities that the basis upon which such contracts have been upheld is that the reduction to writing after marriage of the oral contract made prior to marriage constitutes a sufficient written memorandum of the premarital agreement to take it out of the statute of frauds and does not constitute a new contract subject to statutes similar to or of the nature of Section 3103.06, Revised Code, prohibiting contracts between husband and wife to alter their legal relationship. It seems to be essential, however, that the written agreement expressly refer to the antenuptial agreement and affirmatively shows that it is a memorandum of the oral antenuptial agreement. See Frazer v. Andrews (1907), 134 Iowa, 621, 112 N. W., 92, 11 L. R. A. (N. S.), 593; McMinimee v. McMinimee (1947), 238 Iowa, 1286, 30 N. W. (2d), 106.
It is our conclusion that the written agreement here executed by Peter and Christina Weber after their marriage, reciting that it was made for the purpose of setting forth in writing an oral antenuptial agreement between the parties and also reciting the terms thereof and affirmatively showing that it is a memorandum of such antenuptial agreement, constitutes a sufficient “agreement * * * memorandum or note thereof” to comply with the provisions of Section 1335.05, Revised Code, and is not a contract between a husband and wife to “alter their legal relations” as prohibited by Section 3103.06, Revised Code.
Although there is evidence of full performance of the provisions of the oral antenuptial agreement (so far as such performance could be made prior to the demise of one of the parties), we do not find it necessary, in view of the above conclusion, to consider the question of whether such performance took the agreement out of the statute of frauds.
Accordingly, the judgment of the Court of Appeals is reversed and the judgment of the Probate Court is affirmed.

Judgment reversed.

Wey&andt, C. J., Zimmerman, Taet and Bell, JJ., concur.