## SAFE-DEPOSIT & TRUST CO. OF PITTSBURG v. WRIGHT et al.

(Circuit Court of Appeals, Third Circuit. November 30, 1900.)

No. 3, September Term.

**1. JUDGMENTS—COLLATERAL ATTACK.**

In a suit for the partition of lands which were subject to the lien of certain judgments, the court cannot, on distribution of the proceeds of the lands after their sale, inquire into the consideration of the notes on which a senior judgment was rendered, for the purpose of giving a later judgment priority.

**2. SAME—CONCLUSIVENESS—JUDGMENT ENTERED ON WARRANT OF ATTORNEY.**

A judgment entered on a warrant of attorney, under the established law of Pennsylvania, until reversed or set aside, has all the qualities and conclusive effect of a judgment on a verdict.

**3. SAME—IMPEACHMENT FOR FRAUD—JUNIOR LIENHOLDER.**

While the holder of a junior judgment may collaterally impeach a senior judgment for fraud against himself, to the extent of defeating the priority of lien, he cannot do so on the ground merely that the judgment was fraudulent as against the defendant.

**4. PROMISSORY NOTE—CONSIDERATION—INDEBTEDNESS OF ANCESTOR.**

A note given by heirs for a debt of their ancestor, which was enforceable against his estate, although it had ceased to be a lien upon his realty, is not without consideration, so that a judgment rendered thereon can be impeached by the holder of a junior judgment against the makers, in the absence of fraud or collusion to defeat the rights of such junior creditor.

**5. EXEMPTION—WAIVER.**

Under the law of Pennsylvania, the right of exemption is a personal privilege, which may be waived; and a waiver of such right in a note under seal, which has passed into judgment, is irrevocable.

Appeal from Circuit Court of the United States for the Western District of Pennsylvania.

W. G. Guiler, for appellant.

R. H. Lindsey, for appellees.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

GRAY, Circuit Judge. This is an appeal from the order and decree of the circuit court of the United States for the Western district of Pennsylvania sustaining the exceptions filed by the Second National Bank of Brownsville, Pa., to the master's report on distribution of the funds realized by him from the sale of certain real estate under proceedings instituted in said circuit court for partition of the said real estate among heirs at law of Thomas S. Wright, late of Fayette county, Pennsylvania, deceased, who died intestate and seised of said real estate. Thomas S. Wright died intestate November 7, 1893, leaving to survive him a widow, Nancy Wright, and the following named children: Harry S. Wright, John A. Wright, William D. Wright, Moses Wright, Bessie Wright, and Thomas S. Wright, all of whom were of lawful age at the time of the said proceedings and sale of said real estate, and Charles S. Wright, a minor, and Nancy Wright Gribble, minor daughter of Nancy Wright Gribble, deceased, who was a daughter of the said intestate. This suit or proceeding in partition was instituted by Harry S. Wright, above named, one of the co-parceners, and a citizen of the state of Illinois, against the widow, Nancy Wright, and his brothers and sisters above named, the other co-parceners, all of whom were citizens of the state of Pennsylvania. Charles S. Wright and Nancy Wright Gribble, the minors, appeared by their guardian, William Parkhill. At the time of his death the said Thomas S. Wright was indebted to the Second National Bank of Brownsville on certain bankable notes. No suits were brought on these notes by the bank within two years after Wright's death, and under the laws of Pennsylvania the lien for the debt thus evidenced against the real estate expired, although the debt itself survived, and judgment was recoverable on the same in a suit against the estate. In January, 1897, more than three years after the death of Thomas S. Wright, and after the expiration of the lien for the debt due from him to the bank, the widow, Nancy Wright, and five of the decedent's children, namely, Harry S., Moses, John A., William D., and Bessie Wright, all sui juris, executed under their hands and seals, and delivered to the bank, a note containing a warrant of attorney, with a confession of judgment for $8,815, the amount of Thomas S. Wright's indebtedness to the bank. The judgment note was dated January 21, 1897, was payable 12 months after date, with interest from May 1, 1897, at the rate of 5 per cent., and contained a waiver of exemptions. The judgment upon this note and warrant was entered in a Pennsylvania state court of competent jurisdiction on January 29, 1897, and was the first lien on the real estate, of which the defendants above named, as heirs at law of their father, were co-parceners, and therefore

became the first lien on the proceeds of the sale of the same, which were in the court below for distribution. The sale was made clear of all liens by a master, under a decree of the court. Two contesting junior judgments against the same defendants were entered in the state court, on warrants to confess judgment, on March 28, 1898,—one in favor of Nancy Wright, for $1,485; the other in favor of Harry S. Wright, administrator of Thomas S. Wright, deceased, for $1,716.91. The master appointed by the court to make the sale was also directed to make distribution of the proceeds and report his findings to the court. All these judgments were against the widow and children of the intestate, and were liens upon their several interests in these lands, as derived from him. There were no judgments against the intestate, Thomas S. Wright, and no liens against these lands, other than those appertaining to the said judgments against the said co-parceners and widow. It was contended in behalf of the plaintiffs in the two junior judgments against the heirs at law that the prior judgment against them should be disallowed as a lien upon the fund, on the ground that it was given without consideration, and because, as was also asserted by counsel in his argument before the master, said judgment was entered by collusion and in fraud of subsequent judgment creditors. As to this assertion there was no independent evidence whatever.

In the return of the distribution made by the master, the judgment in favor of the Second National Bank, above referred to, was postponed to the subsequent judgment entered in favor of Harry S. Wright, administrator of Thomas S. Wright, deceased, against himself, individually, and the other heirs at law, on the ground that the note on which judgment was entered in favor of the bank was without consideration, and voluntary on the part of Nancy Wright and the heirs at law who executed it. The judgment against the same heirs at law in favor of Nancy Wright, however, was not allowed this preference, on the ground that Nancy Wright had voluntarily executed under seal the note and warrant of attorney given to the bank, upon which judgment in its favor was entered, and had thereby consented to the execution of the same by her sons. The note, therefore, it was said, could not be a fraud as to her. It thus appears that the master assumed to examine the consideration of the obligations upon which the judgments had been entered, and to determine whether the prior judgment of the bank should or should not be postponed in the distribution to those subsequently entered. This was clearly a collateral attack upon the prior judgment, and as such within the inhibition of the rule universally applied in such cases. Judgments and decrees of courts having jurisdiction of the person and subject-matter, regularly entered, import verity; and the policy of the law forbids that the solemn judgments of courts of justice should be set aside, or their efficacy impaired or interfered with, except in a manner and by a direct proceeding as solemn and regular as that in which the pronouncement of the judgment itself was made. This was the view of the court below, which accordingly allowed the exceptions to the master's report, and ordered distribution to be made upon the judgments in

the order of their priority. In this we think the learned judge of the court below was clearly right.

The judgment in favor of the bank was entered on a warrant of attorney, but was, in the language of the learned judge below, "as much an act of the court as if it were formally pronounced on nil dicit or a cognovit, and until it is reversed or set aside it has all the qualities and conclusive effect of a judgment on a verdict." The decisions of the supreme court of Pennsylvania in Braddee v. Brownfield, 4 Watts, 474, and Lennig's Appeal, 93 Pa. St. 307, referred to by the learned judge below, establish this proposition as the law of Pennsylvania.

This judgment, then, in favor of the bank, was a first lien upon the property which had been sold, and was conclusive upon the master in making distribution of the proceeds of sale. Neither he, nor the court of which he was an officer, could in this proceeding for partition do otherwise than recognize this judgment in all its efficiency, and give to it the priority which apparently belonged to it on the records of the court in which it was rendered. No jurisdiction existed in the court below, in this collateral proceeding, to question the bona fides of the note upon which the judgment was entered, or to otherwise attack the integrity of its record. No petition or statement was filed before the master by the creditors in the junior judgments alleging fraud or collusion. In fact, nothing in the way of pleadings, or substitutes therefor, were filed in the case for the purpose of attacking the validity of the judgment, or its right to priority of lien as against the plaintiffs or holders of the junior judgments. If there is irregularity or error in the judgment of a court having jurisdiction of the subject-matter and the parties, it cannot for that be impeached in a collateral proceeding. It "can only be vacated on motion in the court in which it was rendered, or reversed for error in an appellate jurisdiction." It is well settled, however, that fraud in the entry or obtaining of a judgment may be shown in a collateral proceeding by others than the parties to the judgment, where such fraud affects injuriously the interests of such others. The debtor or defendant in a judgment will be allowed, in a proper proceeding, to show fraud, as against himself, practiced by the plaintiff in obtaining the judgment; but such fraud against the debtor or defendant, merely, will not avail third parties, such as the holders of junior judgments, for the purpose of affecting the lien of the prior judgment. The fraud that can be taken advantage of by third parties must be such as affects them; that is, the entry or obtaining of the judgment sought to be impeached must be a fraud upon the interests or rights of such third parties, whether it be a fraud on the defendant or debtor or not. From this, of course, it follows that, though a judgment be fraudulently obtained as against the defendant, it may not be a fraud as against third parties. It has become a well-settled rule, therefore, that subsequent creditors and plaintiffs in junior judgments may collaterally impeach the senior judgment as having been entered or obtained by collusion between plaintiff and defendant, with intent to defraud or hinder such subsequent creditors. In such case, if the impeach-

ment be successful, the effect is not to vacate the judgment, but only to disallow its interfering lien, so far as such subsequent creditors are concerned, leaving it in force as between the original parties, and for all other purposes. Fraud, however, cannot be presumed in such a case. The collusion and fraudulent intent should be alleged in some appropriate written statement or pleading, and it must in all cases be satisfactorily proved. In the case before us there was no allegation of such collusion and fraudulent intent, except such as was made ore tenus by counsel to the master, and no evidence whatever that such had been practiced against the contesting judgment creditors. The only testimony relied upon for that purpose by counsel in the argument was that of one of the defendants, to the effect that the judgment in favor of the bank was without consideration and voluntary, because it was given by the heirs at law and widow, for no indebtedness of their own to the bank, but solely for that of the intestate. And the master's finding merely states that the bank's judgment "is without consideration, except the pre-existing debts of Thomas S. Wright [the intestate], and that the judgment note or bond upon which it is entered is voluntary." Want of consideration, however, is not of itself sufficient to support a collateral attack upon a judgment. Not even when coupled with fraud upon the defendants is it sufficient, as is clearly stated in Thompson's Appeal, 57 Pa. St. 175. Fraud upon the defendant in the judgment attacked is not necessarily fraud against the junior judgment creditors. Upon the evidence disclosed in the record, and upon the master's finding of fact, as above stated, we think there is an entire failure to show collusion with fraudulent intent, or with what amounts to fraudulent intent, against these attacking junior judgment creditors, and that upon this ground alone the judgment of the court below, sustaining the exceptions to the master's report, should be affirmed. The whole contention of appellant is founded on the assumption that the note to the bank, upon which judgment was confessed, was without consideration, and therefore void as against subsequent creditors. We have already shown the inefficacy of this contention in this case, even if such assumption were true. But we do not think that it is true. The lands of these defendants, which were subject to the lien of the judgments against them, had devolved upon them as the heirs at law and widow of the intestate, and for two years after his death were subject to a lien for the indebtedness of the intestate to the bank. The bank had lost that lien by not prosecuting its claim within that period. The debt was not, however, extinguished, and would have supported a suit against the administration of the intestate's estate. The giving of the note, with warrant to confess judgment, by the widow and heirs at law, was in effect a continuance of that lien against the same lands in their hands, and a recognition of a moral obligation to restore to the plaintiff the legal advantage of which it had been deprived by operation of law. The notes thus given come clearly within the rule which sanctions a promise made in consideration of a pre-existing legal obligation, though at the time determined by a positive legal requirement. Such a moral obligation is now universally

recognized in American and English jurisprudence as sufficient consideration to support a promise.

The court below was also right in allowing the exceptions to the master's finding that Nancy Wright and Bessie Wright were entitled to the exemption under the law of Pennsylvania, which they had expressly waived. We quote and adopt the language of the learned judge in the court below:

"In Pennsylvania it is conclusively settled that the statutory exemption is a personal privilege, and may be waived. Case v. Dunmore, 23 Pa. St. 93; Bowman v. Smiley, 31 Pa. St. 225. Here the waiver was in writing and under seal, and it had become part of the judgment. Clearly it was irrevocable. Id. In the case of Hoffman v. McDermond, 1 Pittsb. R. 197, cited by the master, the waiver was oral and without consideration."

It follows, of course, that the court below was right in approving the master's action in refusing to postpone the bank's judgment to that of Nancy Wright. The bank's judgment was entitled to the priority which was evidenced by the record, and the order and decree of the court in the premises is accordingly affirmed.