JOSEPH E. KNIGHT, Petitioner and Respondent, v. BERTHA O. HARRISON, Minnie Maine Knight, Mildred T. Knight, Helen W. Knight, Hanna Olive Knight, a Minor, and S. B. Bartlett as Guardian and Trustee for Said Hanna Olive Knight, a Minor, Abbie E. Knight, and H. M. Washburn, Defendants and Respondents, and LOUISE G. KNIGHT, Defendant and Appellant.

(174 N. W. 632.)

**Executors and administrators — question for vacation of decree of distribution must be brought as a direct attack of decree.**

1. To set aside or vacate a final decree of distribution of a county court in this state upon equitable grounds of mistake, it is necessary to bring an action directly for that purpose.

**Executors and administrators — action to set aside part of final decree is collateral attack and will not be sustained on grounds of mistake only.**

2. In an action for statutory partition of the property of a deceased among the heirs entitled thereto, pursuant to a final decree of distribution of the county court of this state, wherein it is sought to set aside and vacate such final decree, in part, in such proceeding, it is *held* that this is a collateral attack upon such final decree.

**Executors and administrators — collateral attack on decree of distribution.**

3. In such action final decree of distribution of a county court in this state is not subject to collateral attack upon the equitable grounds of mistake, where the jurisdiction of the county court and no fraud or collusion, are shown.

**Executors and administrators — effect of decree of distribution.**

4. In such action, where it appears that such action of partition was instituted by one of the heirs, a son of the deceased, to have allotted in severalty the estate of the deceased pursuant to the statute, among the persons en-

titled thereto, in accordance with the terms of the final decree of distribution theretofore rendered, and a supplemental complaint is therein filed, concurred in by the remaining children, the heirs of the deceased, which seeks to set aside such final decree so far as the same awards a one-third distributive share to the widow of the deceased, upon the ground that such widow was never the wife of the deceased by reason of the failure of a court in California to enter and file a final decree of divorce between such widow and her former husband, and where it appears that the parties in such proceeding were parties to the proceeding had in the county court, it is *held* that the final decree of distribution rendered is *res judicata* between the parties in this proceeding.

Opinion filed June 30, 1919.

Action of partition in District Court, Cass County, *Cole,* J., wherein it is sought to vacate and set aside, in part, a final decree of distribution of a county court in this state.

From a judgment rendered in favor of the children of the deceased, and from an order denying a new trial and leave to file an amended answer, the widow of the deceased, one of the defendants, appeals.

Reversed and judgment ordered to be entered for partition in accordance with the final decree of distribution.

*T. H. McEnroe,* for Louise G. Knight, one of the defendants and appellant.

Where positive evidence exists which proves that the defendant has all along recognized the plaintiff's right, delay on the part of the plaintiff in bringing the suit will be excused. 18 Am. & Eng. Enc. Law, 111; Hovey v. Bradbury, 112 Cal. 620; Sailesby v. Young, 3 Cranch, 249.

The relationship of the parties and the fact that they are members of the same family has an important bearing on the question of laches; a delay under such circumstances not being so strictly regarded as where the parties are strangers to each other. 18 Am. & Eng. Enc. Law, 113.

Laches cannot be imputed to one who was ignorant of his rights and for that reason failed to assert them. Ibid.

A collateral attack is an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting, or modifying such judgment or decree. 17 Am. & Eng. Enc. Law, 848.

A judgment cannot be impeached collaterally on account of any illegality or insufficiency in the cause of action on which it is founded, this not being a jurisdictional defect or sufficient to render the judgment void. 23 Cyc. 1068, 1071, 1095.

The policy of the law of the civilized world is to sustain the validity of marriage contracts. Re Wood (Cal.) 69 Pac. 900.

The court may amend its records *nunc pro tunc,* and when amendment is ordered, the clerk must alter the record therein so as to conform to the amendment. The amended record stands as if it had never been defective, and no court can independently inquire into its verity—and when and how it was altered forms no part of it. We are not at liberty to inquire how it came to be as it is. Galloway v. Keithen, 42 Am. Dec. 153; Jones v. Lewis, 47 Am. Dec. 338, and note p. 340; Hamilton v. Seitz, 64 Am. Dec. 694; Ware v. Kent, 82 Am. St. Rep. 132, and note p. 133.

"Good faith means without fraud or deception; it signifies honesty as distinguished from mala fides—bad faith. In general, good faith means without notice, as well as for a valuable consideration." 14 Am. & Eng. Enc. Law, 1078; Gress v. Evans, 1 Dak. 383.

"As between Davidson and Richardson, the *nunc pro tunc* entry is retrospective and has the same force and effect as if entered at the time the judgment was rendered, and unless they have rights intervening prior to the date of such entry its effect cannot be questioned by third parties." Davidson v. Richardson, 126 Am. St. Rep. 738; Freeman, Judgm. 3d ed. 67.

The correction of the judgment placed the parties in the same attitude they would have been if the omission to enter up the record had not occurred. Leonard v. Broughton, 16 Am. St. Rep. 347; Coe v. Erb, 59 Ohio St. 259, 69 Am. St. Rep. 764.

None of the heirs or legatees have any vested interest in the property of a deceased person; and the state can do away with the right of inheritance or bequest altogether. Strauss v. State, 36 N. D. 594; Davidson v. Richardson, 126 Am. St. Rep. 738; Leonard v. Broughton, 16 Am. St. Rep. 347.

"Every intendment must be indulged in favor of the validity of the proceedings not inconsistent with the record." Los Angeles County Bank v. Raynor, 61 Cal. 145.

A *nunc pro tunc* entry of record is competent evidence of the fact which it recites, and cannot be impeached collaterally. Ninde v. Clark, 4 Am. St. Rep. 832 and note.

There is an inherent common-law power in the court to cause the entry of the judgment *nunc pro tunc* in proper cases and in furtherance of justice. Re Wood (Cal.) 60 Pac. 900; Re Cook, 1 L.R.A. 567; Baum v. Roper (Cal.) 82 Pac. 390; Nolte v. Nolte (Cal.) 154 Pac. 873; Re Pillsbury (Cal.) 166 Pac. 11.

The power is inherent in courts of law and equity to make "entries" of judgments *nunc pro tunc* in proper cases, and in furtherance of the interests of justice. Knefel v. People, 187 Ill. 212, 79 Am. St. Rep. 217.

"It is the duty of the court to see that the parties shall not suffer by delay; a *nunc pro tunc* order should be granted or refused as justice may require in view of the circumstances of the particular case." Freeman, Judgm. § 57; and see Fox v. Hale & N. Silver Min. Co. (Cal.) 41 Pac. 328; Borer v. Chapman, 119 U. S. 587, 30 L. ed. 533.

*J. F. Callahan, S. B. Bartlett, Engerud, Divet, Holt, & Frame,* for respondents.

The interlocutory judgment entered in a divorce suit does not dissolve the marriage bond. Deyoe v. Supreme Ct. (Cal.) 74 Pac. 28; Grannis v. Superior Ct. (Cal.) 79 Pac. 891; Re Seiler, 128 Pac. 334.

In actions for divorce the court must file its decision and conclusions of law as in other cases. Cal. Civ. Code, § 131; Crim v. Kessing (Cal.) 26 Pac. 1075.

It is not the reducing to writing or signing, but it is the filing of the written findings, conclusions of law, and order for judgment that constitutes the decision. Comstock v. Superior Ct. 57 Cal. 625.

This method of rendering a decision is mandatory (Russell v. Amador, 2 Cal. 305), and is exclusive of every other method (Hastings v. Hastings, 31 Cal. 95; Canadian & Co. v. Clarita & Co. 74 Pac. 301).

The "decision" must be reduced to writing and filed with the clerk. Crim v. Kessing, 26 Pac. 1074; Bank v. Mahoney Min. Co. Fed. Cas. No. 392.

The rendition of the judgment is a judicial act. Its entry upon the records is purely ministerial. Comstock etc. Co. v. Superior Ct. 57 Cal. 625.

The filing of the findings, conclusions, and order for judgment in the clerk's office in the county where the case was pending being the act which constitutes the decision and determines the action, it was held to be immaterial where the judge deliberated on and signed the findings and order. Holt v. Holt (Cal.) 40 Pac. 390.

Decisions holding that the written findings, conclusions, and order for judgment filed with the clerk constitute the decision, and that it is not the writing of these documents, but the filing of them with the clerk of court where the case is tried which constitutes the decisions referred to in §§ 632 and 633, Cal. Civ. Code Proc., are found in Conolly v. Ashworth, 33 Pac. 60; Hastings v. Hastings, 31 Cal. 95; Warring v. Frear, 28 Pac. 115; Broder v. Conklin, 33 Pac. 211; Walter v. Merced Academy, 59 Pac. 136; Porter v. Hopkins, 63 Cal. 53; Sawyer v. Sargent, 3 Pac. 872; Clifford v. Alleman, 24 Pac. 292; Hibernia v. Moore, 8 Pac. 824; Rose's Estate, 20 Pac. 712; Wood v. Etiwanda, 54 Pac. 726; Crane v. First Nat. Bank, 26 N. D. 268; Matheson v. Wood (Wash.) 64 Pac. 520; Northern, etc. Co. v. Hender, 41 Pac. 913.

Until the decision has been filed with the clerk the case was not fully tried. Warring v. Frear, 28 Pac. 115.

Until the decision itself has been entered in the minutes, or reduced to writing by the judge and signed by him and filed with the clerk, the case has not been tried to legal intent. This mode of deciding or evidencing the decision of cases is exclusive.

Other California cases which have used similar language to that just quoted from the last two cases are: Broder v. Conklin, 33 Pac. 211; Connolly v. Ashworth, 33 Pac. 60. For similar holdings see also: Polhemus v. Carpenter, 42 Cal. 375; Van Court v. Winterton, 61 Cal. 615; Mace v. O'Reilly, 11 Pac. 721; Northern, etc. Co. v. Hender, 41 Pac. 913; Matheson v. Ward (Wash.) 64 Pac. 520; Crane v. First Nat. Bank, 26 N. D. 268.

To be effective and capable of supporting a judgment, a "decision" must be filed with the clerk before the judge retires from office.

A *nunc pro tunc* order cannot be made for the purpose of declaring that something was done which was not done. Its only office is to cause the record to show something done which was actually done but which by mistake or neglect was not at that time entered in the record. Re Cook, 17 Pac. 923; Re Cook, 19 Pac. 431; Re Cook, 23 Pac. 392.

Entries *nunc pro tunc* can only be made upon evidence furnished by the papers and filed in the case or something of record or in the minute book or judgment docket as a basis to amend by.

Other California cases announcing a similar rule are: Swain v. Naglee, 19 Cal. 127; Hegler v. Henckell, 27 Cal. 491; Railway Co. v. Holschlag, 45 S. W. 1101; Dranghan v. Bank, 1 Stew. (Ala.) 66.

Where the law requires records to be kept they are the only lawful evidence of the action to which they refer, and such records cannot be contradicted or supplemented by parol. The whole policy of the law would be defeated if they could rest partly in writing and partly in parol. See also following cases: Railway Co. v. Golasher (Mo.) 45 S. W. 1101; Whitewell v. Emory, 3 Mich. 84; Boulden v. Jennings (Ark.) 122 S. W. 639; Lawrence v. Landford (Ark.) 153 S. W. 592.

Where a judgment of a domestic court of general jurisdiction is void for want of jurisdiction apparent upon the record, it is, in legal effect, no judgment. In legal contemplation it never had a lawful existence. By it no rights are devested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars anyone. Frankel v. Satterfield, 19 Atl. 898.

This rule is of universal application, and it was recognized by this court in the case of Shane v. Peoples, 141 N. W. 737.

And it has been recognized and applied by the supreme court of California in the following cases: Grannis v. Superior Ct. 79 Pac. 891; Braley v. Seaman, 30 Cal. 610; Forbes v. Hyde, 31 Cal. 342; Steinbach v. Leese, 27 Cal. 295; McMinn v. Whelan, 27 Cal. 300; Hahn v. Kelly, 34 Cal. 391; Hill v. City Cab Co. (Cal.) 21 Pac. 728; Felton v. Insurance Co. 15 N. D. 373; Cowdry v. London Bank (Cal.) 73 Pac. 19; Young v. Young (Mo.) 65 S. W. 1016; Gray v. Brignardello, 68 U. S. 627, 17 L. ed. 693; Wells v. Gieske (Minn.) 8 N. W. 380; Auerbach v. Behnke (Minn.) 41 N. W. 946; Boulden v. Jennings, 122 S. W. 639; Forbes v. Hyde, 31 Cal. 342; Coe v. Erb, 59 Ohio St. 259, 69 Am. St. Rep. 764; Vose v. Morton, 4 Cush. 27; Hunter v. Cleveland, etc. 31 Minn. 505.

It does not accord with the spirit of the law that the rights of third persons, not parties to the suit, nor privies to such parties, should be adjudicated by a *nunc pro tunc* decree in the rendition of which they

43 N. D.—6.

have not participated. Sinkler v. Berry (Or.) 96 Pac. 1070; McCormick v. Wheeler, 36 Ill. 114; Remick v. Butterfield (N. H.) 64 Am. Dec. 318; Auerbach v. Behnke (Minn.) 41 N. W. 946; Wells v. Gieske (Minn.) 8 N. W. 380; Freeman, Judgm. 3d ed. § 66; Coe v. Erb, 59 Ohio St. 259, 69 Am. St. Rep. 764; Gilpin v. Fishburn, 15 Am. Dec. 614; Creed v. Marshall (N. C.) 76 S. E. 270; Harvey v. Wheelock, 1 Mont. 713; Ninde v. Clark (Mich.) 4 Am. St. Rep. 823, 28 N. W. 765; Aklin v. Acklin, 45 Ala. 609.

BRONSON, J. This is an action for partition wherein it is sought to vacate in part a final decree of distribution entered in the county court of Cass county. The defendant Louise G. Knight has appealed from a judgment rendered in favor of the plaintiff and the remaining defendants, awarding partition and setting aside, in part, such final decree, and from the order of the trial court denying a new trial, with leave to file an amended answer.

There is little dispute upon the facts. This appeal involves, practically, questions of law alone. In substance, the facts are as follows:

The appellant was married to one Bonfoey, in Michigan in 1883. In August, 1903, the husband, Bonfoey, instituted an action for divorce upon the ground of desertion in the superior court of Los Angeles county, California. The appellant admitted service and made no answer or appearance in such action. On September 25, 1903, the divorce action came up before, and was submitted for decision to, the court in California. On September 30, 1904, the judge of the California court made and signed an interlocutory decree, which provided that, upon the expiration of one year from and after the entry of such interlocutory decree, a final decree should be made dissolving the bonds of matrimony. On October 9, 1905, the appellant, age stated thirty-nine years, was married to one Elmer Gordon, age stated forty-four years, by the judge of the superior court of San Diego county, in the city of San Diego, who certified that he believed the facts stated in the marriage license to be true, and that there appeared no legal impediment to the marriage. On November 30, 1909, said Elmer Gordon died in San Bernardino county, California, from accidental causes. On January 19, 1910, the appellant pursuant to a marriage license issued in Orange county, California, was married to the deceased, Suel H. Knight, age stated seven-

ty-five years, residence Cass county, North Dakota, by a justice of the peace of such county, at Santa Ana, who certified that he believed the facts stated in the license to be true, and upon inquiry that there appeared to be no legal impediment to the marriage. On January 26, 1914, said Knight died intestate in Los Angeles county, California, and at the time was living there with the appellant. He left surviving him seven children, all of age excepting one girl, who appears in this action by her guardian. Such children are his only heirs at law if the appellant is not entitled to her statutory share in his estate. Thereafter proceedings for the administration of the estate of the deceased were instituted in the court of Cass county, this state, and pursuant to proceedings had in such county court, a final decree of distribution was rendered and entered by the court on December 30, 1915. Such decree of distribution awarded one third of the real and personal property to the appellant and the remaining two thirds to the respondents. The estate consists of farm lands, city buildings and lots and personal property, aggregating an appraised valuation of over $150,000. An agreement in writing was made between the appellant and the respondents that, after the date of the decree of distribution, and up to and including December 31, 1916, one Washburn, who was the administrator, should rent, manage, and control the property of the estate and attempt to dispose of the same for a fee of 5 per cent and a commission of 5 per cent, in case of an agreed sale of any of such property. On March 27, 1917, a complaint was filed by the plaintiff herein in the district court of Cass county, alleging ownership of the parties herein in the property of the deceased, pursuant to the final decree rendered, including the one-third interest of the appellant therein, and praying for a statutory partition of the real property in severalty. On October, 1917, the appellant herein requested leave of the court to file her answer and, upon leave being granted, her answer was filed praying for a partition in accordance with the demand of the plaintiff's complaint. In August, 1917, a written contract was made between the parties hereto, wherein the plaintiff agreed to sell to the appellant and to the remaining children all of his right and interest in the real and personal property of the estate for the sum of $33,000, $10,000 to be paid on September 1, 1917, and the balance on or before ten years thereafter. Upon this agreement the plaintiff brought an action for specific perform-

ance and filed a *lis pendens,* but, after the commencement of this action of partition, the same was abandoned and dismissed.

On April 18, 1918, pursuant to an application made, the trial court permitted the plaintiff to file an amended and supplemental complaint. In this supplemental complaint many of the facts hereinbefore stated are alleged, and it is further alleged that the appellant was never the wife of said deceased, but that she was and for many years had been the lawful wife of said Bonfoey; that the plaintiff and the other children of the said deceased did not ascertain such fact until within six weeks prior to the filing of such supplemental complaint; that the proceedings had in the county court and with relation to such estate were so had upon the belief of the parties interested that said appellant was in fact the wife of said deceased. Such complaint therefore prayed that the final decree of the county court be set aside to the extent that it awarded to said appellant such interest as the widow of the deceased, and that it be decreed that the children of said deceased be the only heirs and the ones entitled to the entire estate; that, further, such children be determined to be the owners in fee as cotenants of the real and personal property of the estate; that furthermore such children recover judgment against the appellant for the moneys paid to her, some $9,902, out of such estate, and that partition of the real and personal property be had as provided by law. To this supplemental complaint the defendants, other than the appellant, interposed an answer admitting all the allegations thereof and asking for judgment as demanded therein. To such supplemental complaint the appellant interposed a second separate answer denying specifically the allegations therein contained concerning her status as the widow of the deceased. In such answer the appellant specifically alleges that she procured an absolute divorce from said Bonfoey, in the superior court of Los Angeles county, California, which ripened into a final decree and judgment of divorce, and that such judgment is now in full force and effect. That furthermore the county court of Cass county had full jurisdiction and entered a final decree of distribution in the estate of the deceased pursuant to which the appellant became entitled to the distributive share therein mentioned. The action herein, upon these issues, came up for trial in the district court in October, 1918. Upon the trial it was shown that an interlocutory decree hereinbefore mentioned in the di-

vorce case of Bonfoey v. Bonfoey was duly made and filed in the California court, but that the final decree of divorce was never, in fact, entered. There was introduced, however, a *nunc pro tunc* final decree of divorce, made by the successor of the judge who heard the divorce case and entered by the court on August 31, 1918, which awarded an absolute decree of divorce and ordered that such decree be entered as of the date, October 4, 1905.

This *nunc pro tunc* divorce decree was secured upon a showing made to the California court by said Bonfoey to the effect that his attorney inadvertently failed and neglected to cause to be entered the final decree of divorce at the expiration of one year from the entry of the interlocutory decree.

On November 20, 1918, the trial court in this action made findings through which judgment was ordered, setting aside the final decree of the county court so far as it awarded the distributive share of the estate to the appellant, granting to the children of the deceased the right to recover from her some $8,215 received by her from the estate, and ordering a partition of the property. Pursuant thereto judgment was entered on November 26, 1918. Thereafter in January, 1919, the appellant made a motion for a new trial, among other things, upon grounds of newly discovered evidence and for leave to file an amended answer. Upon such motion there was presented to the trial court a new, amended final decree of the California court, dated December 11, 1918, which directed the entry of a final decree of divorce *nunc pro tunc* as of the date of October 4, 1905, and recites therein that such court did after the expiration of one year from the entry of such interlocutory decree, to wit, on or about the 4th day of October, 1905, sign a final order and decree in and conformative to such interlocutory decree, but that the same was through inadvertence not presented to the clerk, and not entered by the clerk of the court, and has become lost. This amended decree was secured upon a showing made through the affidavit of Lizzie Farmer, the sister of the appellant; that such sister called upon the judge of the California court, who heard the divorce action and who advised her that he had signed the final decree and that everything requisite in the matter had been done. Also the affidavit of said Bonfoey, to the effect that he asked his attorney in such divorce action if the final decree had been procured, and that he was advised that the final decree

had been prepared and had been signed by the judge, and that he would cause it to be filed, and also the affidavit of Beulah Rynerson, the daughter of the appellant and said Bonfoey, to the effect that in a letter which said attorney for Bonfoey wrote to the appellant that the final decree had been granted, had been signed by the judge, and that everything had been done that was required by law to be done in such matter to make said decree final. There was also presented to the court an affidavit of the appellant to the effect that she received such letter from said attorney, and that she wrote to her sister, and that she received a letter from her sister to the effect that said judge had advised of his signing such final decree. There are also affidavits of diligence used to ascertain the facts. On March 4, 1919, the trial court denied the motion of the appellant. This appeal is before this court upon such record.

The action was tried to the court apparently as an equity action. All the evidence offered was received. The appellant demands a trial *de novo* and specifies some twelve alleged errors. It is the contention of the appellant that, upon the showing made before the trial court for a new trial, the amended judgment of divorce is a valid judgment; that it could be validly entered *nunc pro tunc;* that there is a sufficient showing of a final decree of divorce in fact, having been pronounced valid as a judgment even though not entered and filed by the clerk of the California court; that the respondents in this action are seeking to collaterally attack a judgment of the county court of this state duly entered.

The respondents contend that the record upon which the judgment herein was secured affirmatively shows no valid judgment of divorce granted to the appellant; that likewise upon the showing made by the appellant for a new trial the amended judgment of divorce then presented shows no valid judgment of divorce existing at the time the final decree of distribution was made or prior thereto. That furthermore, under the decisions and the law of California, no valid judgment could be rendered in a divorce action until it had been, in fact, filed and entered; that the amended judgment of divorce could not operate retroactively to destroy or affect the rights of the respondents herein; that the judgment of divorce, as amended or otherwise in the California courts, was subject to collateral attack, being void on its face, at least so far as the rights of the respondents herein are concerned, and that

the respondents are directly attacking such final decree of distribution manifestly made through mistake. The main arguments of the parties relate to the construction to be placed upon the law and the decisions of the state of California concerning the pronouncing and rendition of a final judgment. In our opinion it is wholly unnecessary to pass upon or determine the construction to be given, or the interpretation that should be placed upon the law or the decisions of California. The respondents seek by a partition proceeding to have awarded to them the estate due them pursuant to a final decree of distribution made in a court of record in this state, in the manner in which they desire it to be revised. It is conceded by the respondents that, in rendering that final decree of distribution, the county court had jurisdiction of the parties and jurisdiction over the subject-matter. There is no contention made in that regard. In this partition action they are seeking a statutory partition as provided in this state to have awarded in severalty the property of the state after such final decree was rendered and by reason of such final decree having been rendered. It is clear that prior to the entry of such final decree of distribution the action of partition could not be maintained. Honsinger v. Stewart, 34 N. D. 513, 159 N. W. 12. It is also clear that the final decree of distribution constituted a valid final judgment; that this decree could not be made by any other court or in any other proceeding. Comp. Laws 1913, §§ 8531–8533; Sjoli v. Hogenson, 19 N. D. 82, 122 N. W. 1008; Joy v. Elton, 9 N. D. 438, 83 N. W. 875. It stands of equal rank with any judgment entered by any court in this state. Fischer v. Dolwig, 29 N. D. 561, 151 N. W. 431.

In Sjoli v. Hogenson, 19 N. D. 92, 122 N. W. 1008, court stated: "The decree of distribution is an instrument by virtue of which heirs receive the property of the deceased. It is the final determination of the rights of the parties to a proceeding, and, upon its entry, their rights are thereafter to be exercised by the terms of the decree. There is another reason why the final decree of distribution in the estates of deceased persons must be held conclusive. Under our probate system, all deraignment of title to the property of deceased persons is through the decree of distribution, entered as a final act in the administration of an estate, whether testate or intestate. No one will contend that this decree can be made by any other court, or in any other proceeding. It

constitutes not only the law of the personalty, but also of the real estate. Toland v. Earl, 129 Cal. 148, 79 Am. St. Rep. 100, 61 Pac. 914. A decree of distribution has, in most respects, all the efficacy of a judgment at law or decree in equity. An action may be maintained upon it for noncompliance with its requirements, and there is no greater necessity for a demand before bringing action than exists in case of suit upon an ordinary judgment at law, or before issuing an execution upon a judgment. Melone v. Davis, 67 Cal. 279, 7 Pac. 703. When a decree of distribution has been made the probate court has no longer jurisdiction of the property distributed, and the ·distributee thenceforth has an action to recover his estate, or, in proper cases, its value."

The action of partition is in the nature of a chancery action, cognizable under equity powers. 20 Cyc. 170 ; McArthur v. Clark, 86 Minn. 165, 91 Am. St. Rep. 333, 90 N. W. 369. It is true that the plaintiff, upon his supplemental complaint, seeks to avoid this final decree of distribution by the exercise of the equity jurisdiction of this court to vacate the same upon grounds of mistake, but nevertheless the main purpose of the action is for partition pursuant to a final decree of distribution which respondents seek to revise, and which they claim the right to revise in determining the title of the parties in such proceeding.

The respondents, by this action of partition, invoke a form of action and a proceeding which cannot precede, but must follow and be pursuant to, the final decree, for the evident reason that the· deraignment of title to the property of the deceased must be through the decree of distribution. It is apparent from this entire record that if any legal wrong or mistake has been accomplished with reference to the divorce proceedings in California, it has occurred by no acts or mistakes of the parties themselves, but by the acts of the court or of its officers, including the attorneys who are officers of the court. It is further clear that all of the parties to this proceeding, including the deceased, the father of the respondents, have always acted upon the assumption and belief that the appellant was in fact the wife of the deceased, and not living in adulterous relations with him. It is also clear that in California, at various times, legal action has been taken upon the theory that the appellant and said Bonfoey were in fact divorced. The California court so recognized when it certified and permitted the appellant to marry one Gordon. It likewise so certified when it permitted the appellant to marry the de-

ceased in California, and there to reside with him until he died. In equity the respondents come before this court with a claim unconscionable in its nature, which seeks to secure for themselves the distributive share of the appellant by reason of a legal technicality and a legal nicety. In effect, they are seeking in equity for the application of the maxim that "equity follows the law." It so happens in this case that justice may be done between the parties by equity following the law. The attempt of the respondents herein to attack the validity of the final decree of distribution in this action is a collateral attack upon a valid judgment of a court of record in this state. Shane v. Peoples, 25 N. D. 188, 141 N. W. 737; Bradley v. Drone, 187 Ill. 175, 79 Am. St. Rep. 214, 58 N. E. 304; Kavanagh v. Hamilton, 53 Colo. 157, 125 Pac. 512, Ann. Cas. 1914B, 76. See note in Ann. Cas. 1912A, 983; 23 Cyc. 1062; Safe Deposit & T. Co. v. Wright, 44 C. C. A. 421, 105 Fed. 155; Van Fleet, Collateral Attack, ¶ 3. It is well settled that a final judgment is not subject to collateral attack except upon jurisdictional grounds or grounds of collusion or fraud. Joy v. Elton, 9 N. D. 428, 438, 83 N. W. 875; Sjoli v. Hogenson, 19 N. D. 82, 93, 122 N. W. 1008; 23 Cyc. 1323. To set aside such judgment, upon equitable grounds, it is necessary to bring a direct proceeding for that specific purpose. 23 Cyc. 1033, 1323. There is no intimation in this record of lack of jurisdiction of the county court or of any grounds whatsoever of collusion or fraud. The respondents assert that the judgment of the California court, being void on its face, is subject to collateral attack. Though such contention be recognized, nevertheless, this does not mean that they can or are able to collaterally attack the final decree rendered in this state. In the same action the respondents cannot both seek a decree based upon a final judgment of this state and at the same time seek to vacate and set the same aside. Furthermore, in this collateral attack made in this partition proceeding, the final decree of distribution is *res judicata* between the parties. It involved the question of the right of succession which necessarily was passed upon as a prime requisite in the determination made in the final decree of the county court. Upon plain principles of *res judicata,* therefore, the respondents in this proceeding, who were parties to the probate proceeding resulting in the final decree of distribution, are bound thereby. 23 Cyc. 1106, 1114, 1215; Sjoli v. Hogenson, 19 N. D. 82, 93, 122 N. W.

1008; Caujolle v. Ferrié (Caujolle v. Curtiss) 13 Wall. 465, 20 L. ed.
507. It therefore follows that the trial court wholly erred in setting
aside or vacating the final decree of the county court in this proceeding,
and the judgment rendered is erroneous in that regard. It is therefore
ordered that the judgment of the District Court be reversed, with direc-
tions to enter judgment of partition in accordance with the final decree
of distribution as rendered. The appellant will recover costs.

ROBINSON, J. I concur not only on the grounds above stated, but also
on the ground that appellant was the wife of deceased.

GRACE, J., concurs.

BIRDZELL, J. (dissenting). I dissent. This is a civil action origi-
nally started for the purpose of securing a partition, but upon the subse-
quent discovery of some facts indicating that one of the defendants,
Louise G. Knight, had not procured a final decree of divorce from her
former husband, Bonfoey, an amended complaint was filed, asking,
first, that the decree of the county court finding her entitled to a dis-
tributive share of the estate of Suel H. Knight be vacated and set aside
on account of the mistake; and, second, that the property be partitioned
among the heirs according to their respective interests as alleged in the
complaint. The majority of this court holds that the action seeking
relief from the judgment of the county court on the ground of mistake
is a collateral attack on the judgment, and, apparently, the holding is
based upon the fact that additional relief in the shape of partition is
asked for. It may be observed, too, that while the majority deny the
relief sought from the judgment of the county court on the sole ground
that it is linked with a prayer for partition, the judgment of this court
directs a partition to be had *according to the same final decree of dis-
tribution.* Whether or not it is intended that this decision shall be *res
judicata* as to the right of the parties hereto to bring a wholly independ-
ent action in the district court to set aside the decree of the county
court on the ground of mistake does not appear in the opinion. It is
singular that the complaint in this action is dismissed, in so far as it
purports to state a ground for relief from the judgment of the county
court, on the technical ground that there is linked with it a prayer for

partition, and yet the opinion directs that the partition proceed according to a decree which the chancellor knows may subsequently turn out to be wrong, and one from which relief may yet have to be given in a separate action. Or can it be that the majority intend to entirely dispose of the alleged right to vacate the decree of the county court on the purely technical and procedural ground that it was erroneously linked with a prayer for partition? I can scarcely believe that a result so far at variance with modern, liberal, common-sense code procedure was intended. The question, however, is clearly left open by the majority opinion. I dissent principally from the method adopted by the majority in thus disposing of this appeal, and also from the holding on the procedural question made controlling.

The majority, having disposed of this case on what seems to me to be a procedural technicality, have found it unnecessary to discuss the merits of the issues raised by the pleadings and presented on the record relative to the personal status of Louise G. Knight, as the widow of S. H. Knight, and the propriety of granting relief from the decree of distribution entered in the county court upon the ground of the mistake made, if any, in relation to such status. I am disposed to determine the case on the merits of the issues presented; but since the majority of the court is not so disposed, it is obvious that an expression of an individual opinion on the merits of the case is unnecessary and beside the point which is thus made controlling.

The complaint purports to state a cause of action for relief from the final decree of distribution, according to which the majority opinion has directed distribution to be made. Section 8809, Compiled Laws of 1913, provides that an action to set aside a decree directing or confirming a sale or otherwise disposing of the property of any estate may be instituted and maintained at any time within three years of the discovery of fraud or other ground upon which the action is based. The complaint in the action characterizes it as an action to set aside a decree on the ground of mistake. This court held in Fischer v. Dolwig, 29 N. D. 561, 151 N. W. 431, 39 N. D. 161, 166 N. W. 793, that this section authorized proceedings in the nature of equitable actions to vacate or set aside judgments of the county courts on equitable grounds after the time had expired for the correction of errors by motion or appeal. It has also held that the county court had no such equitable juris-

diction. Reichert v. Reichert, 41 N. D. 253, 170 N. W. 621. It is elementary in Code procedure that, so far as pleading is concerned at any rate, there are no distinctions observed between actions at law and suits in equity, and that all forms of action, both at law and in equity, are abolished. Comp. Laws 1913, § 7355. It is equally elementary that all causes of action, whether legal or equitable, which arise out of the same transaction or transactions connected with the same subject of action, may be joined. Comp. Laws 1913, § 7466. The majority has clearly treated as the subject of the action the property sought to be divided, and has ordered a partition. But yet it holds in effect that there is a misjoinder of causes resulting from the statement of another transaction, namely, the decree of distribution, which affects that subject. Furthermore, this action is of the character denominated equitable, and it is axiomatic that when equity acquires jurisdiction for one purpose it will retain jurisdiction for every purpose required to administer complete relief between the parties. So far as my researches go, I am unable to find any instance where, in an equitable suit, one party, who has set forth in his bill or complaint all his grounds for relief touching a given subject-matter, has been directed to start an independent action, also in equity and affecting the same parties, for the purpose of obtaining part of the relief asked in that action, instead of being allowed to pursue it in the one in which it is already included. Lost motion of this character certainly sins against simplified procedure, and invites repetitions of Jarndyce v. Jarndyce.

The principle according to which complete relief is administered in an action is especially applicable where partition is asked for, because in such a proceeding it is important that when the partition is awarded it will result in placing each party in possession of his own proper share. "Hence," says Cyc. quoting from Freeman, Cotenancy & Partition, § 505, "when a suit for partition is in a court of equity or in a court authorized to proceed with powers as ample as those exercised by courts of equity, it may be employed to adjust all the equities existing between the parties and arising out of their relation to the property to be divided." 30 Cyc. 230. Or, as is said in Pomeroy, 6 Pom. Eq. Jur. § 717: "It is characteristic of equity in matters of partition that not only does it afford a more advantageous and adequate relief than is obtainable at law, but it also takes into consideration the various and diverse equities of the respective parties growing out of their ownership

of property in common, and adjusts and disposes of them upon broad principles of fairness and equality. This incidental relief extends only to such equities as arise out of the relation of the parties to the joint property, *but this may include the disposition of matters preliminary to final partition* and to the management of the property pending the partition proceedings. Thus, a deed or devise may be construed, or a mortgage reformed and foreclosed and the manner of its payment be prescribed, or deeds may be corrected and conveyances ordered." See also Ulman v. Iaeger, 67 Fed. 980–985. Under the majority opinion in this case, the preliminary equity to have the decree of distribution vacated or set aside may not be disposed of, and an exception is made to this wholesome rule.

But, says the majority, this proceeding constitutes collateral attack on the judgment of the county court. But they indicate that if that portion of the complaint which asks for partition be stricken out so that it would stand as a mere complaint in an action to vacate, seeking but the single relief, it would not be collateral. The term "collateral attack" is certainly one to conjure with. I cannot understand by what process of logic or reasoning an attack which, when singly stated, is direct, becomes collateral by the circumstance of having an added prayer for consequential relief attached to it. To further test the conclusion of the majority, suppose the action to partition had been brought by Louise G. Knight ( ?), the heirs of S. H. Knight being made defendants, and an answer alleging the mistake embodied in the final decree of distribution had been interposed by the heirs. This, certainly, on the assumption that the mistake is one authorizing relief, would constitute an equitable reason for denying the plaintiff the relief sought in the complaint. But yet, under the majority holding, the court would be powerless to entertain it because of the magic that would make the statement of such equitable circumstances in an answer in a partition suit a collateral attack upon the judgment. The court would thus be driven by the irresistible logic of its conclusions in this case, not only to deny relief to the defendants according to the equitable circumstances stated in the answer, but it would also be compelled to decree a partition in favor of the plaintiff. Can it be possible that equitable procedure has degenerated to the extent that it renders the court helpless to arrest the

entry of a decree which it knows from facts formally pleaded may turn out to be erroneous and inequitable?

The authorities cited by the majority do not support the conclusion. An examination of them discloses that they are cases where it was attempted to impeach a judgment by facts *dehors* the record and without pleading such facts as constituting a cause for interfering with it. The case of Shane v. Peoples, 25 N. D. 188, 141 N. W. 737, is cited. The complaint in that case was before the court on demurrer, and the primary holding is that the complaint is vulnerable; that it is lacking in equity. In what is said subsequently it must be borne in mind that the court *was dealing with facts insufficient in equity to constitute a ground for relief from the judgment.* Reference to the briefs in that case shows that counsel for the appellants conceded that if the proceedings for the sale of real estate in probate court be regarded as proceedings *in rem,* they were out of court. The court decided that the proceedings were *in rem.* In view of the pleading and counsels' concession, there was only left to the plaintiff a collateral attack on what was apparently a valid judgment. Of course this could avail them nothing. The briefs further disclose that the action was brought long after the three-year limitation provided for in § 8809, Compiled Laws of 1913, had run. But I bring to the aid of the majority the case of Kavanagh v. Hamilton, 53 Colo. 157, 125 Pac. 512, Ann. Cas. 1914B, 76, which is an authority apparently in point in support of the majority opinion. It will be noticed that one of the principal contentions in the case was that the judgment of the county court was void. It also appears that the judgment which was attacked had stood for over fourteen years, so that the court's conclusion that the judgment was being attacked collaterally would probably have been the same had the court considered the attack as being direct.

Van Fleet, in his work on Collateral Attack, § 3, says: "A collateral attack on a judicial proceeding is an attempt to avoid, defeat, or evade it, or to deny its force and effect in some manner not provided by law. . . . When a judicial order, judgment, or proceeding is offered in evidence in another proceeding, an objection thereto on account of judicial errors is a collateral attack. Familiar instances are where a person relies on a judgment as a justification for a trespass . . . or to show his right or title in . . . ejectment, trespass to try title, or

suit to quiet title. That the objection to the judgment for judicial errors in such cases is a collateral attack, the cases all agree."

The essence of this definition is that any attack in some manner *not authorized by law* is collateral. Judgments may be attacked on account of errors committed in prior proceedings, the usual course of correcting such being by motion for a new trial, appeal, or writ of error. These are not only direct methods of attacking judgments *upon these grounds,* but they are practically exclusive. Judgments may also be attacked when equity requires that they should not be enforced because of the existence of facts which bring the matter within equitable cognizance, and which render their enforcement inequitable. This is direct attack upon equitable grounds, such as is contemplated in § 8809. Fischer v. Dolwig, 29 N. D. 561, 151 N. W. 431, 39 N. D. 161, 166 N. W. 793. The case of Bergin v. Haight, 99 Cal. 52, 33 Pac. 760, affords a good illustration of a direct attack upon a judgment of a probate court in an equitable action to quiet title. The court said (page 55): "It is claimed by appellant that this is a collateral attack upon the orders of the probate court, and that since the record of the proceedings shows that the court had acquired jurisdiction, and that the proceedings were upon their face regular, the order confirming the sale cannot be thus attacked. It is true the court did acquire jurisdiction to administer upon the estate, and to order and confirm the sale of the property; but it does not follow therefrom that this is a collateral attack. The attack is a direct attack upon the sale, on the ground of fraud, and as such is authorized by law. Van Fleet, Collateral Attack, pp. 4, 5, 15, and authorities cited. It is not every species of fraud, however, which may be the basis of an action to vacate an order or judgment. To be actionable, as stated by our chief justice in Pico v. Cohn, 91 Cal. 129, 13 L.R.A. 336, 25 Am. St. Rep. 159, 25 Pac. 970, 27 Pac. 537, it must be a 'fraud extrinsic or collateral to the questions examined and determined in the action. . . .' "

Before the attack can be considered collateral it must, within all the authorities, be an unauthorized attack; that is, one recognized as lawful. It frequently happens that one against whom a judgment is entered in a given court has cause to have the judgment vacated. The customary mode of vacating a judgment is by application to the court in which the judgment is entered, setting forth the grounds recognized

as being sufficient for that purpose. Manifestly if an attempt were
made in some other court, even a court possessing equitable powers, to
vacate a judgment upon grounds which should be presented to the court
possessing inherent power over its own judgments, the application
would be properly ignored. Not so much because it would constitute
collateral attack as because it would intrench upon the inherent power
of a court to vacate its own judgments upon proper showing, and be-
cause this is the simple and expeditious remedy for that purpose. See
Rowe v. Silbaugh, 96 Wash. 138, L.R.A.1918D, 466, 164 Pac. 923.
Thus, in an action in the superior court of a certain county to quiet
title against a sheriff's deed executed in pursuance of a judgment ren-
dered in the same court, it was held that the attack was sufficiently
direct. Krutz v. Isaacs, 25 Wash. 566, 66 Pac. 141. It was also held
that the complete relief could be granted; but in an action to remove
cloud caused by the issuance of a deed by the sheriff of another county
based on a judgment of the latter county, it was held that the attack
upon the judgment was not authorized because the action was not in-
stituted in the court of the county where the judgment was obtained.
Had it been instituted there, it was stated that complete relief could
have been administered in the one action. Rowe v. Silbaugh, supra.
The point of these decisions is that it is not the character of the action,
in connection with which relief from the judgment is asked, that de-
termines whether or not the attack on the judgment is collateral, but it
is rather the consideration as to whether the court in which the applica-
tion is made can properly assume control over the judgment to the ex-
tent of granting the relief sought. In the instant case, it is manifest
that no court other than the court in which this action was brought can
exercise the equitable jurisdiction necessary to determine the right to
set aside the judgment. If, therefore, the suitors which the majority
send forth without relief are ever to be relieved from the county court
decree, they must turn about, retrace their steps, and apply to the same
court from which they have just been sent. See also Lewis v. Mauer-
man, 35 Wash. 156, 76 Pac. 737.

From what has been said it is not to be assumed that the writer of
this opinion entertains views opposed to giving full force and effect to
judgments regularly entered by courts possessing the requisite juris-
diction. His views on this subject, as expressed in Fischer v. Dolwig,

39 N. D. 161, 166 N. W. 797, have undergone no change. The sound policy in this regard has perhaps never been better expressed than by Justice Baldwin in the case of Voorhees v. Jackson, 10 Pet. 449, 473, 9 L. ed. 490–499: "The errors of the court, however apparent, can be examined only by an appellate power; and by the laws of every country a time is fixed for such examination, whether in rendering judgment, issuing execution, or enforcing it by process of sale or imprisonment. No rule can be more reasonable than that the person who complains of an injury done him should avail himself of his legal rights in a reasonable time, or that that time should be limited by law. This has wisely been done by acts of limitations on writs of errors and appeals; if that time elapses, common justice requires that what a defendant cannot do directly in the mode pointed out by law, he shall not be permitted to do collaterally, by evasion. A judgment or execution irreversible by a superior court cannot be declared a nullity by any authority of law. . . . If, after its rendition, it is declared void for any matter which can be assigned for error only on a writ of error or appeal, then such court not only usurps the jurisdiction of an appellate court, but collaterally nullifies what such court is prohibited by express statute law from even reversing. If the principle once prevails that any proceeding of a court of competent jurisdiction can be declared to be a nullity by any court after a writ of error or appeal is barred by limitation, every county court or justice of the peace in the Union may exercise the same right, from which our own judgments or process would not be exempted."

The writer is in full accord with the views above expressed, but they do not apply to a situation in which the statute law of the state recognizes the right of parties affected by a decree of the county court to bring an action to set aside the same upon equitable grounds within a limited time. This is a remedy given in addition to appeal and is as direct as the appeal itself would be, and at the same time more comprehensive than an ordinary appeal (see O'Barr v. Sanders, 113 Ark. 449, 169 S. W. 249) because not limited to errors appearing on the record.

Wholly aside from the question of collateral attack, the decision is erroneous for the reason that the procedural question is not here for decision. It is undisputed that the complaint alleges the facts relied

43 N. D.—7.

upon to set aside the decree of distribution. In the answer filed to the amended complaint the defendant Louise G. Knight pleaded a reliance upon the decree of divorce granted in the state of California and the obligation of the courts of this state to give the judgment force and effect under article 4, § 1, of the Federal Constitution; and it was alleged that, as the widow of S. H. Knight, she was entitled to the distributive share assigned to her by the decree of distribution. The only objection to the testimony offered in proof of the allegations of the amended complaint was that it was incompetent, irrelevant, and immaterial, and did not prove or tend to prove any of the issues in the case, and also that it was inadmissible under the pleadings. It is clear that the pleadings framed an issue as to a mistake in the entry of the decree of distribution, on account of which relief was sought, in addition to the allegations showing a right to partition the property. If there was a misjoinder of causes of action, the complaint was susceptible to attack by demurrer under § 7442, Compiled Laws of 1913. Had the demurrer been sustained, plaintiffs would have had the opportunity to strike from the complaint either the allegations supporting the cause for relief from the final decree and the accompanying prayer of relief, or the allegations respecting partition. Or they could have appealed from the order sustaining the demurrer, and obtained a final decision on the procedural question, before proceeding with the merits of the case. Furthermore, had counsel for the defendant Louise G. Knight, upon the trial, conceived the complaint to be multifarious, the question might have been presented to the trial court by a motion that the plaintiffs be required to elect upon which equitable cause of action they would proceed. The complaint, it is clear, purports to state as complete a cause of action for relief from the decree of distribution as it does for partition, and if the question of misjoinder or multifariousness is not raised in the court below, it certainly should not be made the basis of a reversal on appeal after a trial on the merits. It is unnecessary to cite authority in support of a proposition so elementary as this.

For the foregoing reasons I respectfully dissent from the majority opinion. I regard it as the manifest duty of this court to decide the case on the merits of the issues presented by the pleadings and in the record.

CHRISTIANSON, Ch. J. (dissenting). The purpose of this action as stated in the amended complaint is: First, to set aside the decree of distribution; and, second, to partition certain real property. No objection was made in the court below on the ground of misjoinder. It is undisputed that if the facts are as alleged in the complaint and found by the trial court, and the laws of California are as respondents assert, then the appellant was not the wife of the deceased, Suel H. Knight, and the decree of distribution was founded upon a mistake of fact. In my opinion the facts in the case and the laws of California are as contended for by respondents, and the appellant never in fact became the wife of the deceased, Suel H. Knight. Nor do the majority members express any opinion to the contrary. As my brother Birdzell has so well pointed out, they ignore the merits and dispose of this important litigation solely upon procedural grounds. I fully agree with him in his criticism of the majority opinion. Added force to that criticism has been given by the majority members themselves, as, since the decision in this case was filed and pending the time allowed for filing petition for rehearing, they have held that a decree of distribution may be vacated by an action solely on the ground that the county court made a mistake of law in distributing property,—a mistake apparent on the face of the proceedings and which could readily have been corrected by appeal. See Moore v. Palmer, infra, 174 N. W. 93.